John J. McDONOUGH
v.
William E. KELLY et al.
Civ. A. No. 3105.

United States District Court,
D. New Hampshire.
July 28, 1971.

Jack B. Middleton, McLane, Carleton, Graf, Greene & Brown, Manchester, N. H., for plaintiff.

J. Francis Roche, City Sol., Manchester, N. H., for defendants.

## OPINION

BOWNES, District Judge.

This action, brought pursuant to 28 U.S.C. § 1343, alleges that the plaintiff has been deprived of rights guaranteed him under the Constitution of the United States in violation of 42 U.S.C. § 1983. The plaintiff was a school teacher in the City of Manchester, New Hampshire, and alleges that the hearing given him prior to his dismissal did not meet the constitutional requirements of due process of law, and, therefore, his dismissal was invalid. The case was tried without a jury.

There are two basic questions: (1) whether the plaintiff was entitled to a hearing. The resolution of this question turns on the interpretation of the New Hampshire statutes and the plaintiff's employment status; and (2) whether the hearing given was constitutionally defective.

The plaintiff started teaching in New Hampshire in 1959. He has taught the sixth, seventh, eighth, and ninth grades, but was mainly a Junior High School teacher which, in New Hampshire, includes only the seventh, eighth, and ninth grades. He was certified by the State Board of Education to teach English, General Science, and Social Studies in Junior High School. In addition to teaching school, the plaintiff had been active in local politics. He was elected to the Manchester School Board in 1959 and served on it for at least one year. He also served one term as a member of the Board of Aldermen in the City of Manchester. It is fair to conclude that the plaintiff was not unfamiliar with public hearings and School Board procedure.

In 1967 the plaintiff started teaching at the Hillside School in Manchester, a Junior High School. Although he was

rated excellent by the principal, James Noucas, the plaintiff's difficulties culminating in this case started in May of 1969, because he felt Mr. Noucas was being unfair to him. There was no evidence at all as to how this unfairness was manifested, but it is clear that in May of 1969, the plaintiff was unhappy with his teaching assignment at the Hillside School primarily because Mr. Noucas was the principal.

In May of 1969, new teacher contracts were sent out for signing to individual teachers. These contracts were part of a master contract between the Manchester Teachers' Association and the School Board that had been the subject of negotiations for months and had been tentatively approved, subject to financing, by the Manchester Board of Aldermen. The plaintiff denies that he ever received this contract. The evidence, which I accept, was to the effect that the contract was put in the mail boxes of the teachers at the Hillside School in May of 1969. Whether the plaintiff actually received this contract or not, he did not return it. Toward the close of the 1969 school year, Principal Noucas called the plaintiff into his office and asked him if he had forgotten about the contract. The plaintiff answered him by saying in effect: "No, it's a matter of finances. I am going to look for something else." The plaintiff did not report for work at school June 16th or 17th and, since June 17th was graduation day and a busy one, his absence did cause some difficulty. This was reported by Mr. Noucas to the Assistant Superintendent of Schools, Henry McLaughlin.

On June 20, 1969, the plaintiff began a long series of correspondence with the Superintendent of Schools, Dr. William E. Kelly. While this first letter was ambiguous, like the subsequent letters of the plaintiff, it is clear that the plaintiff wanted a different school assignment. On June 27th the superintendent replied by letter and asked the plaintiff if he was going to resign, stating that he construed the plaintiff's letter of June 20th as a resignation. But the superintendent did not really think that the plaintiff had resigned. He testified in his deposition:

Q. During the summer of 1969 did your office treat Mr. McDonough's situation as if he had resigned?

A. No. We treated Mr. McDonough's situation as though we didn't know whether he had resigned or not but with the feeling that he would probably come back in September because this had happened before. Deposition of Dr. Kelly, pages 21–22, question 88.

In September of 1969, the plaintiff was offered a position by Assistant Superintendent McLaughlin teaching sixth grade at the Gossler School. It was also suggested to him that there was a chance to become vice principal of this school. The plaintiff puts a great deal of emphasis on the fact that the position at the Gossler School was outside the terms of his teaching certificate. It was the only position available that fall for which the plaintiff was, in the opinion of the superintendent and assistant superintendent, qualified. The testimony of Superintendent McLaughlin makes it clear that a school administration can assign a teacher to a particular position even though that position is outside the teacher's certification if the administration feels that the teacher can fill the position. If the position is filled effectively by the teacher, the administration then obtains a provisional license covering it. The license comes after the fact. So, in this case, a provisional standards license effective September 1, 1969, enabling the plaintiff to teach sixth grade English, was issued January 20, 1970. I hold that the superintendent had a right to assign the plaintiff to teach sixth grade English, and the plaintiff had no legal or contractual right to pick his teaching assignment.

There was a distinct misunderstanding between the plaintiff and Assistant Superintendent McLaughlin as to the terms and conditions of the assignment at Gossler School. The plaintiff thought that the assignment was only temporary and that he would be given a position

teaching at a Junior High School in the district when such position opened. Both the assistant superintendent and the superintendent considered this to be a permanent assignment. Neither the plaintiff nor the school administration was aware in September of 1969 of the difference between them as to the terms of the Gossler School assignment. The plaintiff accepted the assignment and started teaching at the Gossler School in September of 1969. After he started teaching, the plaintiff was sent another contract, this time by mail, which was not returned. The plaintiff claims he never received a 1969 contract. He also claims that he was teaching under his 1967 contract. In the light of the fact that the plaintiff's contract was the only one not returned to the Manchester School Office and that there had been a teachers' strike and a great deal of publicity concerning the terms of the 1969 contract, the plaintiff's position on this point is dubious to say the least. I hold that he received at least one, or both, of the 1969 contracts and that he deliberately refrained from returning them because he was unhappy about his teaching assignment.

 The defendants claim that since the plaintiff had not signed the 1969 contract, he was neither tenured nor hired for the 1969–1970 school year and could be dismissed without the hearing required under N.H.Rev.Stat.Ann.,

Ch. 189:13 [1] or Ch. 189:14-a [2] and, consequently, any hearing given the plaintiff did not have to meet constitutional standards. The defendants' position overlooks the fact that both the superintendent and assistant superintendent retained the plaintiff in September of 1969 on a permanent basis. It was not until December 29, 1969 (Pl.Ex. 8), that the superintendent knew that the plaintiff understood that the Gossler assignment was to be only temporary. It is clear that the school administration, regardless of the contract status of the plaintiff, had hired him at least for the school year 1969–1970, i. e., from September through June.

N.H.Rev.Stat.Ann., Ch. 189:14-a gives a teacher who has taught for three or more years the right to a hearing if he is not rehired. Neither section 13 or 14-a of Chapter 189 mentions a written contract as a condition precedent to a right to a hearing. Since the plaintiff had taught for three or more years in the Manchester School District and since he was dismissed before the end of the 1969–1970 school year, the period for which he was engaged, he was entitled to a hearing on the question of dismissal under both sections.

This finding makes it unnecessary for me to decide, or even discuss, the question of whether the master contract became effective in March or September, a matter to which both parties directed much time and attention at the trial and

---

1. Ch. 189:13 provides:

Dismissal of Teacher. The school board may dismiss any teacher found by them to be immoral or incompetent, or one who shall not conform to regulations prescribed; provided, that no teacher shall be so dismissed before the expiration of the period for which said teacher was engaged without having previously been notified of the cause of such dismissal, nor without having previously been granted a full and fair hearing.

2. Ch. 189:14-a provides:

Failure to be Renominated or Reelected. Any teacher who has a professional standards certificate from the state board of education and who has

taught for one or more years in the same school district shall be notified in writing on or before March 15 if he is not to be renominated or reelected. Any such teacher who has taught for three or more years in the same school district and who has been so notified may request in writing within five days of receipt of said notice a hearing before the school board and may in said request ask for reasons for failure to be renominated or reelected. The school board, upon receipt of said request, shall provide for a hearing on the request to be held within fifteen days. The school board shall issue its decision in writing within fifteen days of the close of the hearing.

which I indicated then was immaterial and now rule to that effect.

On December 29, 1969, the plaintiff wrote the superintendent threatening legal proceedings unless he was assigned to a Junior or Senior High School. Pl. Ex. 8. On January 12, 1970, the superintendent informed the plaintiff that there was no vacancy in English in the Junior High Schools and since he had been absent from school in December and early January, instructed him to return to his present position by January 19th. The superintendent's letter also informed the plaintiff that if he did not return to work, the administration would take such action as was necessary.

There was a personal meeting between the plaintiff and the superintendent on January 9th, at which the only thing decided was to meet again on January 12th. The meeting of January 12th resulted in the decision that the administration "would have to take whatever steps were necessary to remove him." Deposition of Dr. Kelly, page 25, question 102. The plaintiff testified along the same lines stating that he wished to bring things to a head.

On January 14th the plaintiff wrote the superintendent asking that he replace a teacher by the name of Pettigrew who was leaving. Pl.Ex. 10. This letter contained a postscript clearly indicating that the plaintiff expected a hearing if he was to be dismissed. The superintendent replied to this demand by pointing out that the plaintiff's file indicated that he was not qualified to teach Pettigrew's course in United States History, and asked if the plaintiff had sufficient credits to qualify him in that field. Pl.Ex. 11.

On January 16, 1970, the plaintiff wrote again to the superintendent. Pl. Ex. 12. This letter has special significance because the defendants claim it constituted a waiver of the plaintiff's right to a hearing. Such a construction does not stand scrutiny. The letter indicates clearly, particularly the last three paragraphs, that the plaintiff wanted a hearing as quickly as possible. The only

things that plaintiff was waiving were the time requirements precedent to a hearing which were part of his 1967 contract and since it was not in effect, were not binding anyway. The prior correspondence between the plaintiff and the superintendent and the personal meeting on January 12th establish that by the letter of January 16th, the plaintiff was asking to be dismissed so that he could initiate the hearing procedure under N.H. Rev.Stat.Ann., Ch. 189:13 & 14-a. The superintendent replied with a letter on January 22nd stating that the plaintiff had been removed from the payroll as of January 5, 1970. On January 23rd, the plaintiff was informed by letter from the superintendent that there would be a hearing at the School Department Office:

This is to inform you that a hearing will be held at the School Department Office at 88 Lowell Street on Wednesday, January 28, 1970 at 7:30 P.M.

At this hearing the School Committee will be asked to discharge you as a teacher on the grounds that you refused to work as instructed by my letter of January 13, 1970.

The superintendent obviously meant his letter of January 12th, not the 13th, because there is no letter of January 13th.

■ The plaintiff questions the adequacy of this notice because it failed to inform him of his right to be at the hearing or right to be represented by counsel. This position is rejected. The plaintiff clearly knew he had a right to be present at the hearing. His prior correspondence indicates he knew this, see particularly his letter of January 16, 1970 (Pl.Ex. 12), and the plaintiff was not a neophyte insofar as School Board procedure was concerned. He had served both on the School Board and the Board of Aldermen in the City of Manchester. Finally, and most importantly, the plaintiff did appear at the hearing fully prepared to state his case. As to the defect based on the failure to notify the plaintiff that he had a right to be represented by counsel, I find that at the hearing on January 28th, the plaintiff was told he

could have counsel if he wished and a continuance would be granted so he could obtain counsel, and the plaintiff expressly and knowingly waived his right to counsel.

■ The plaintiff also claims that he was deprived of due process because he did not receive the same notice that was sent to the members of the School Board outlining the agenda for the meeting. Pl.Ex. 15. Since the agenda actually adopted at the hearing was different than the one outlined in the notice and was agreed to by the plaintiff, this is harmless error and certainly did not deprive the plaintiff of any meaningful right.

■ There is a sharp dispute in the testimony as to how the hearing was conducted and I, therefore, make the following specific findings. After the plaintiff arrived, the City Solicitor suggested a method of proceeding to which plaintiff agreed. At the outset of the hearing, the plaintiff was asked whether he wished a public or a private hearing and he chose to have a private hearing and the press was asked to leave. He was told that he had a right to be represented by counsel and was given an opportunity for a continuance in order to obtain counsel. He expressly waived his right to counsel, stating in effect that he could represent himself and did not want any delay. The plaintiff was given an opportunity to first present his case and he was not prevented in any way from giving a full and complete exposition of his cause. The superintendent of schools then presented the administration's side of the issue. Since the plaintiff had elected to proceed without counsel, he was allowed to interrupt the superintendent at any time during the presentation of the administration's case and ask questions, which he did. There were no witnesses other than the plaintiff and Superintendent Kelly, but an affidavit of Assistant Superintendent McLaughlin and an unsworn statement of one of the principals of a Junior High School at which the plaintiff had taught were con-

sidered by the Board. Both of these documents were made available to the plaintiff. None of the testimony, which consisted solely of the statements of the plaintiff and Dr. Kelly, was transcribed.

In the context of the circumstances leading to the hearing, I hold that the plaintiff was afforded a procedurally fair hearing. Due process does not require, in this setting, the full trappings of a court trial. Drown v. Portsmouth School District, 435 F.2d 1182, 1185 (1st Cir. 1970). What is required is set forth in Goldberg v. Kelly, 397 U.S. 254, 267–268, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970):

> In the present context these principles require that a recipient have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally.

■ The plaintiff was given what amounted to an unlimited right of cross-examination of Dr. Kelly and a full opportunity to present his own arguments and evidence orally. While it certainly would have been better practice and far more prudent on the part of the School Board, who had been warned of probable legal action by the plaintiff, to have had a record made, the failure to do so was not a fatal procedural defect. While the use of either affidavits or unsworn statements in lieu of live witnesses is not to be condoned or encouraged, and should be avoided whenever possible, the use in this case did not render the hearing constitutionally unfair. The hearing was essentially a conflict between the superintendent and the plaintiff as to the plaintiff's teaching assignment. Neither his conduct nor his competency was being questioned. There were no vital questions of fact in issue. Moreover, the plaintiff by agreeing to the procedure outlined by the City Solicitor at the start of the hearing effectively waived any procedural defects as to the conduct of the hearing.

■ Although the hearing itself was fair, the procedure followed by the School Board after the hearing vitiated the hearing and deprived the plaintiff of his teaching position in violation of his constitutional right to due process of law. The Manchester School Board, or Board of School Committee as it is called, consists of fifteen members, one from each Ward in the City of Manchester, plus the Mayor of the City Ex-Officio. At the hearing on January 28th, two members of the Board were absent, Dr. Lianos and Mayor Pariseau. The rules of the Manchester School Board require that an affirmative vote of the whole Board is necessary to remove any employee.[3]

After the hearing, the Board discussed the matter and took two votes. The first vote was seven to six not to dismiss the plaintiff. The second vote was seven to six for dismissal. It is clear that because there was not a majority of the whole Board voting for dismissal, the plaintiff could not be removed on January 28th as a school teacher from the school district of Manchester. The Board agreed to reconvene on February 3, 1970, to consider the plaintiff's case again. This meeting was aborted for some reason, but a meeting was held on February 9th. This was a meeting, not a hearing. The plaintiff was not notified of the meeting nor was he asked to be present. All members of the Board except the Mayor, but including Dr. Lianos, were present. After discussion, a vote was taken and, with Dr. Lianos casting the deciding vote, the Board voted eight to seven not to renew the plaintiff's contract.

The fact that Dr. Lianos voted was, of course, a blatant violation of the plaintiff's constitutionally protected right to due process under the Fourteenth Amendment. The word hearing itself means that those sitting in judgment shall be present to "hear" the evidence. Not only was Dr. Lianos not present at the hearing on January 28th, which by itself was fatal to the plaintiff's right of due process, but prior to the vote on February 9th, he had discussed the plaintiff's case at length with Superintendent Kelly and other members of the administration, and had not discussed it at all with the plaintiff. It does not require any extended citation of authority to rule that it is a fundamental denial of one's constitutional right to due process of law to allow one who has not been present at the hearing to cast the deciding vote on the very issue which was the subject matter of the hearing. To rule otherwise would make a hearing requirement meaningless. In Goldberg v. Kelly, 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970), the Court, quoting Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914), noted: "The fundamental requisite of due process of law is the opportunity to be heard." Certainly, it is just as fundamental that those sitting in judgment be present at the hearing. I rule, therefore, that the plaintiff was denied his constitutional right to due process of law under the Fourteenth Amendment by the action of the Manchester School Board at its meeting on February 9th and, therefore, the order of dismissal was null and void.

■ There are two obstacles to the recovery of damages by the plaintiff, both of his own making. The first obstacle is procedural. The plaintiff has chosen to sue the members of the School Board individually. No suit has been brought against the School District or the City of Manchester. While the very procedure of Dr. Lianos considering the plaintiff's case and voting on it without attending the hearing is shocking to one trained in the law, it does not constitute such bad faith as to render him, and the other School Board members individually, liable in damages. In fact, it must

3. Rule 2.04 of the Rules of the Board of School Committee (Pl. Ex. 1) provides:
 A majority of the whole Board shall constitute a quorum. An affirmative vote of the majority of the whole Board shall be necessary to appoint or remove any employee of the department, to fix salaries, to appropriate money, to amend or suspend the rules.

be found that even though the dismissal was constitutionally impermissible and violative of due process, it was done in good faith. See Gouge v. Joint School District, 310 F.Supp. 984, 990 (W.D. Wisc.1970). Further, it would be unfair to make those members of the Board who voted against dismissing the plaintiff respond in damages.

Under these facts, there was a clear violation by the Manchester School Board not only of the constitutional requirements of due process, but of the New Hampshire statute which requires a full and fair hearing. N.H.Rev.Stat.Ann., Ch. 189:14 provides:

> The district shall be liable in the action of assumpsit to any teacher dismissed in violation of the provisions of the preceding section, [hearing] to the extent of the full salary for the period for which such teacher was engaged.

The plaintiff has chosen to invoke the jurisdiction of the Federal Court and proceed against the individual members of the Board of Education rather than proceed in the State Court against the Manchester School District.

The second obstacle is substantive; the conduct of the plaintiff himself. The plaintiff was dissatisfied with his teaching assignments starting in May of 1969. He suggested, by deliberately ambiguous statements and letters (see particularly Pl. Ex. 6 & 8), that he was going to or would resign. His letters of January 14, 1970, and January 19, 1970, were designed to bring about his dismissal as a teacher by the superintendent of schools so that he would have an opportunity for a hearing before the School Board. The plaintiff's whole course of conduct from May of 1969 to January 28, 1970, evinces clearly that unless he could get a teaching assignment satisfactory to him, he would risk dismissal in the hope that the hearing that was required would result in such an assignment.

Under all of the facts, I do not feel that the plaintiff is entitled to damages from the individual defendants.

It is ordered that the plaintiff be reinstated forthwith as a tenured school teacher in the School District of Manchester. His teaching assignments are to be at the discretion of the School Administration.

So ordered.