**Thomas Justin ORR, Plaintiff,**

v.

**Raymond E. TRINTER et al., Defendants.**

**Civ. A. No. 70–163.**

United States District Court,
S. D. Ohio, E. D.

Aug. 3, 1970.

---

---

Dwight I. Hurd, Columbus, Ohio, for plaintiff.

William J. Melvin, Asst. City Atty., Columbus, Ohio, for defendants.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter has been submitted to the Court on the complaint, defendant's motion to dismiss for failure to state a claim for which relief can be granted, stipulations (substituted for findings which would have been made as a result of a trial on the merits) and memoranda of the parties.

The plaintiff, Thomas Justin Orr, is a school teacher holding a Bachelor of Arts degree and a Master of Arts degree. He is provisionally certified by the Ohio Department of Education to teach English, history and government in any Ohio school district to grades seven through twelve.

Plaintiff was employed during the 1969–1970 school year as a tenth grade English and history teacher at Walnut Ridge High School, Columbus, Ohio under a limited teaching contract.

On April 10, 1970, plaintiff was informed by defendant Trinter, Principal of Walnut Ridge High School, that his contract of employment would not be renewed for the 1970–1971 school year, and he was told that, if he resigned on or before April 15, 1970, his record would show no action by the Board of Education.

Plaintiff did not resign. The defendants did not give plaintiff reasons for their proposed decision not to renew his limited teaching contract. The defendant, Columbus Board of Education, met on April 28, 1970 and reviewed plaintiff's case and held a public discussion of its merits.

Plaintiff was present at the meeting of the Board of Education, but he did not participate in the review of his case or the discussion. Plaintiff was given written notice that his limited teaching contract for the 1969–1970 school year would not be renewed. No reasons were given for the nonrenewal.

On May 1, 1970 and May 22, 1970, subsequent to the action by the Board of Education, plaintiff requested a written disclosure of the reasons for the refusal to renew his teaching contract. Defendants did not respond to these requests.

Plaintiff contends that the defendants deprived him of due process of law under the Fourteenth Amendment in that they refused to renew his limited teaching contract without providing him (1) written notice of the proposed nonrenewal, (2) written notice of a hearing on the reasons supporting nonrenewal and (3) a hearing at which he could present his case and confront his accusers.

Defendants contend that the action should be dismissed because they have no constitutional duty to provide plaintiff a hearing on the reasons for the nonrenewal of his limited teaching contract.

The Court has jurisdiction under the provisions of Title 28, United States Code, Section 1343(3); Title 42, United States Code, Section 1983; and Title 28, United States Code, Sections 2201, 2202.

Defendant asserts that government employment is not a property right, but a privilege, and therefore a government employee has no absolute right to a due process hearing on the reasons for the discontinuation of his employment. Cafeteria and Restaurant Workers Union, Local 473, AFL–CIO v. McElroy, 367 U.S. 886, 894–895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1960); Birnbaum v. Trussell, 371 F.2d 672, 677 (2d Cir. 1968); Jones v. Hopper, 410 F.2d 1323, 1327–1329 (10th Cir. 1969); Parker v. Board of Education, 237 F.Supp. 222, 227–

228 (D.Md.1965), 348 F.2d 464 (4th Cir. 1965) cert. den. 382 U.S. 1030, 86 S.Ct. 653, 15 L.Ed.2d 543 (1966).

■■■■ A statement of the general rule does not end the Court's inquiry. The employment of a teacher in a public school cannot be terminated because he exercised a constitutional right. Slochower v. Board of Higher Education, 350 U.S. 551, 555–556, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Keyishian v. Board of Regents, 385 U.S. 589, 605–606, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Further, the Court must balance the precise nature of the governmental function involved against the private interest affected by the termination of employment to determine whether notice and hearing are required. Cafeteria and Restaurant Workers Union Local 473, AFL–CIO v. McElroy, *supra* 367 U.S. at 895, 81 S.Ct. 1743; Birnbaum v. Trussell, *supra* 371 F.2d at 678; Roth v. Board of Regents, 310 F.Supp. 972, 976–977 (D.Wis.1970).

In the instant case on the facts as stipulated by the parties, there is no evidence that the plaintiff's employment was terminated because he exercised a constitutional right. Therefore, the Court is solely concerned with determining the nature of the governmental and private interests and then balancing them to determine whether plaintiff is entitled to due process hearing at which the defendants must find reasons for refusing to renew his teaching contract.

The Court in Roth v. Board of Regents, *supra* at 976–982 and Gouge v. Joint School District No. 1, 310 F.Supp. 984, 991 (D.Wis.1970) thoroughly discussed the nature of the state's function and interest in operating a public school system and the interest of a non-tenured school teacher whose contract is not renewed. The *Roth* Court found the school board had an interest in assembling and preserving a community of teachers. The Court continued:

I am to consider how vital it is to this interest that during a relatively short initial interval the university [public school system] be free arbitrarily to decide not to retain a professor [teacher], so long as its decision is not based upon his exercise of freedoms secured to him by the Constitution. The concept of tenure obviously enjoys a rational basis, as well as a traditional basis. It is reasonable that there be a time in which to observe a new teacher and scholar and that the university [public school system] retain during that time a considerable latitude in deciding whether he should remain. It is reasonable that after a period of time, or after the newcomer has won a certain measure of acceptance reflected in his academic rank, he should acquire rather strong protection against non-retention; such an arrangement is conducive to productive and perhaps controversial effort. Thus it is reasonable that there be available a very wide spectrum of reasons, some subtle and difficult to articulate and to demonstrate, for deciding not to retain a newcomer or one who has not yet won sufficient respect from his colleagues. And it is reasonable that thereafter this available spectrum of reasons be sharply narrowed and confined to those amenable to articulation and demonstration.

The core issue here, however, is more difficult. No interest of the university is directly served by a regime in which a decision not to retain a newcomer may be made upon a basis wholly without support in fact or by a decision upon a wholly unreasoned basis. If the university is forbidden, constitutionally, to rest its decision on such an arbitrary basis, the question arises: in practice will the university become so inhibited that the available spectrums of reasons for non-retention in the two situations will merge, the distinction between tenure and absence of tenure will shrink and disappear, and the university will be unable to rid itself of newcomers whose in-

adequacies are promptly sensed and grave but not easily defined? It will not do to ignore this danger to the institution and to its central mission of teaching and research.

As against this danger, however, there is to be set the interest of the individual new professor. To expose him to non-retention because the deciding authority is utterly mistaken about a specific point of fact, such as whether a particular event occurred, is unjust. To expose him to non-retention on a basis wholly without reason, whether subtle or otherwise, is unjust. There can be no question that, in terms of money and standing and opportunity to contribute to the educational process, the consequences to him probably will be serious and prolonged and possibly will be severe and permanent. "Badge of infamy" is too strong a term, but it is realistic to conclude that non-retention by one university or college creates concrete and practical difficulties for a professor in his subsequent academic career. Roth v. Board of Regents, *supra*, 310 F.Supp. at 978–979.[1]

▮▮▮ The Court recognizes that a important public obligation, and a school public school system has an interest in providing the best education possible for the children within its district, and further, that this duty requires it to exercise its best judgment as to the qualifications of individual teachers to fulfill this objective. There could be no more board should be free to choose the most efficient method consonant with the Constitution and state law to achieve the goal of proving a good education to the children within its jurisdiction.

A teacher works in a sensitive area in a schoolroom. There he shapes the attitudes of young minds toward the society in which they live. In this, the state has a vital concern. Shelton

v. Tucker, 364 U.S. 479, 485, 81 S.Ct. 247, 250, 5 L.Ed.2d 231 (1960).

But measured against this responsibility, which the Court reiterates the school board must be permitted to fulfill, is the private interest of the school teacher that is affected by termination. The Court cannot ignore the very real consequences to the teacher of a non-renewal of his contract. A decision not to renew a nontenured teacher's contract for employment is recognized by educators to be very similar to a dismissal. *See,* Michael A. Domenicone v. School Committee of the Town of Smithfield, Rhode Island Commission of Education, May 20, 1970.

This same conclusion may be drawn from the stipulated facts in evidence. Plaintiff was told by the defendant Trinter, Principal of Walnut Ridge High School, that if he resigned on or before April 15, 1970, his record would not reflect action by the Board of Education refusing to renew his contract. The clear inference is that plaintiff would have benefited by resigning, rather than having board action shown on his record. The only conceivable benefits are plaintiff's professional standing and the effect of a public discussion on his professional reputation.

This interest of plaintiff in his professional standing and reputation in separate and apart from any interest in a particular job. Such an interest has been recognized by courts as being a determining factor in whether members of other professions are entitled to a due process hearing before their dismissal from a job requiring professional competence. In Birnbaum v. Trussell, *supra,* for example, the Court held that a doctor who was dismissed by a hospital as an attending physician had a substantial interest in not being dismissed on arbitrary grounds and not being dismissed without a hearing at which a fair de-

---

1. Although the plaintiff in *Roth* was a university professor, the reasoning set out is applicable to public school teachers. Gouge v. Joint School District No. 1, *supra* 310 F.Supp. at 991. *Roth* and *Gouge* were companion cases decided by the same Court.

termination of whether or not reasonable grounds existed was made. The interests recognized were his professional reputation and his ability, following dismissal, to pursue a profession effectively.

The Court can perceive no real difference between the dismissal of a doctor from a hospital staff and the failure to renew the contract of a nontenured teacher. Indisputably, each faces the possibility of some damage to his professional reputation and to his ability to pursue his chosen profession.

■ The question remains whether, when the interest of the state and the interest of the individual are balanced, the school board's interest can only be achieved through the procedure of refusing to renew a nontenured teacher's contract without stating reasons therefor or holding a hearing to determine the existence of valid reasons. The Court finds that the interests of the school board and those of the teacher will both be fully protected by a procedure which advises the nontenured teacher of a proposed purpose not to renew his contract and affords him a hearing at which the legitimacy of the reasons compelling such action is determined. Roth v. Board of Regents, *supra;* Gouge v. Joint School District No. 1; *see* Parducci v. Rutland, 316 F. Supp. 352, M.D.Ala., 1970.

■■ The Court holds that a school board's decision not to renew the teaching contract of a nontenured teacher "may not rest on a basis wholly unsupported in fact, or on a basis wholly without reason." Roth v. Board of Regents, 310 F.Supp. *supra* at 979. This due process standard recognizes the school board's interest in maintaining an employment system using the categories of tenured and nontenured teachers. A tenured teacher may not be dismissed except for "good and just cause." Section 3319.16, Ohio Revised Code. It naturally follows that a school board may refuse to renew the contract of a nontenured teacher for less than cause. Section 3319.11, Ohio Revised Code.

Therefore a reviewing court will be bound to respect bases for nonretention which would not satisfy the standard of cause, but which fit within the rationale for making a distinction between tenured and nontenured teachers.

■■ The Court holds that the minimal requirements of procedural due process include:

1. A written statement of the reasons for the proposed nonrenewal of the limited teaching contract transmitted to the teacher prior to the time any final action is taken.

2. Adequate notice of a hearing at which the teacher may respond to the stated reasons for the proposed nonrenewal of the teaching contract.

3. A hearing at which the teacher must be afforded an opportunity to submit relevant evidence controverting the stated reasons.

4. If the board of education finds that the nontenured teacher's limited teaching contract should not be renewed, it must state the reason or reasons supporting the decision.

The initial burden of producing evidence is upon the teacher. If he presents evidence which shows that the stated reasons do not justify a decision not to renew his contract, then the board of education officials requesting his nontenure have the burden of showing that the reasons are appropriate and substantiated by facts.

■ Of course, a teacher may waive his rights to notice and hearing, if he so desires.

It is hereby ordered that the defendants deliver to plaintiff's counsel a written statement of the reasons upon which the defendants relied in deciding not to renew plaintiff's limited teaching contract, that the defendants set a hearing date and cause notice of such date to be given plaintiff's counsel, that said notice advise plaintiff that at the hearing he will be given an opportunity to present

evidence relating to the reasons given for the decision not to renew his limited teaching contract and that within fifteen days of the hearing the defendants advise plaintiff of its decision.

It is further ordered that should the defendants elect not to comply with this Order within thirty (30) days of the date of filing, the defendants shall be required, on or before September 1, 1970, to offer plaintiff a limited teaching contract for the 1970–1971 school year on terms and conditions no less favorable than those contained in his contract for the 1969–1970 school year.