Kenneth T. DUNHAM, Plaintiff, Appellant,

v.

Philip B. CROSBY, Jr., et al., Defendants, Appellees.

No. 7682.

United States Court of Appeals, First Circuit.

Dec. 18, 1970.

Louis Scolnik, Lewiston, Me., with whom David J. Halperin, Portland, Me., was on the brief, for appellant.

Michael T. Healy, Portland, Me., with whom John A. Mitchell and Verrill, Dana, Philbrick, Putnam & Williamson, Portland, Me., were on the brief, for appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Appellant, a public school teacher, brought a 42 U.S.C. § 1983 action against the Superintendent of Schools and the members of the Board of Directors of Maine School Administrative District Number 34. He alleges that appellees terminated his employment during the course of the school year for reasons and by a procedure which violates his constitutional rights. The case was tried below without a jury. At the close of appellant's case, appellees moved to dismiss appellant's complaint under F.R.Civ.P. 41(b). The court made findings of fact and dismissed the claim. From this ruling, appellant appeals.

Appellant's employment required him to hold a teaching certificate, which he did not have because he lacked the requisite education credits. In a previous year, however, he had held a "conditional" or temporary certificate which had qualified him to teach in Maine. Renewal of this certificate was conditioned on obtaining an affidavit from his current Superintendent.[1] Appellant had signed a contract for the 1969–70 school year and was teaching English to ninth grade students in Belfast, Maine, but he had not yet obtained his conditional certificate. The court below found that the Superintendent was willing to sign the affidavit which would result in appellant's being certified, but had not done so, apparently due to an oversight.

During the first two months of the 1969 school year, appellant was employed without the conditional certificate. On

---

1. The affidavit is, in effect, only a recommendation that the teacher be given a conditional certificate.

October 28, he composed an assignment sheet listing several themes of Shakespeare's *Romeo and Juliet* for oral and written discussion. The full text of this assignment was:

Some Interpretations of Romeo & Juliet

1. Story of a feud between two families

2. Conquest of love over hate or conquest of hate over love

3. Destruction of love by a cruel society

4. Rise, decline, and fall of Romeo's sex drive

5. Moderation (nothing in excess) as a principle in guiding one's life

6. Romeo's rise to maturity

7. Juliet as an innocent nymph

8. Juliet as a sexpot

A daughter of a member of the school board was one of appellant's students who received this assignment sheet. She showed it to her father who took it to a meeting of the school board being held that same night. After the sheet was circulated, the board asked the Superintendent to investigate. The Superintendent met with appellant the next day. Appellant was called out of his class and told by the Superintendent, "I have had enough of you. You can either leave quietly or make a fuss about it but you are going to leave." Appellant was then fired and paid off. The firing was accomplished by the simple expedient of making clear to appellant that the affidavit necessary to his obtaining a conditional certificate would not be signed; without that affidavit, appellant could not comply with his employment contract. For the purposes of the 41(b) motion, the court below found that the *Romeo and Juliet* assignment sheet was the cause of the Superintendent's refusal to sign the affidavit. Appellant protested the Superintendent's decision during the course of his interview and asked what the school board thought of the sheet. In reply, the Superintendent told him that a hearing before the school board

would do him no good. Appellant requested no hearing. The minutes of the next board meeting simply mentioned a proposed change in pay for another person who was "substituting in the position of teacher of English at Crosby Junior High School recently vacated by Mr. Kenneth Dunham."

The court below ruled that on the basis of the facts presented by appellant, there was no evidence that the members of the school board conspired to deprive appellant of his constitutional rights. Appellant argues that the board's authorization of the Superintendent to investigate and its subsequent approval of a contract for the person hired to replace appellant constitute a ratification of the Superintendent's action implicating the members in a conspiracy. The district court found the facts to be otherwise. That finding is not only not clearly erroneous, but compelled on the basis of testimony which the court could and did deem credible.

On appeal, appellant has added another twist to his ratification theory. He now claims that the manner in which the school board chose to defend this lawsuit, by denying that appellant was legally employed and counterclaiming for the salary paid him, constitutes a ratification of the Superintendent's failure to sign the affidavit. But appellant's complaint alleges that the members of the school board conspired to remove him from his job; the defense of a lawsuit after the firing cannot constitute a conspiracy to fire appellant. Indeed, if the defense of this suit is the basis of appellant's claim against the members, he is in the awkward situation of suing a defendant for conduct which took place after the complaint was filed.

From another perspective, appellant's claim that the board ratified the Superintendent's action by its defense of this suit merges into appellant's final claim, apparently raised for the first time on appeal, that the members of the school board are liable to him under the principle of respondeat superior. Appellant

offers no support for the applicability of this theory in section 1983 actions which seem to contemplate only the liability of persons who have actually abused their positions of authority. It is doubtful that persons can be vicariously liable under 1983. *See* Sanberg v. Daley, 306 F.Supp. 277, 278 (N.D.Ill.1969); Salazar v. Dowd, 256 F.Supp. 220, 223 (D. Col.1966); Jordan v. Kelly, 223 F.Supp. 731, 738–39 (W.D.Mo.1963). Furthermore, appellant has put forth no evidence of the control of the school board over the Superintendent concerning his decision whether or not to sign the crucial affidavit; the only support for appellant's assertion that respondeat superior applies is the Maine law under which the school board is authorized to chose the Superintendent. There is no indication that the Superintendent, once chosen, does not have some duties beyond the board's immediate control. *See* W. Prosser, Law of Torts, § 69, at 472 (3d ed. 1964).

We therefore affirm the district court's dismissal of appellant's action against the members of the school board. But the case against the Superintendent takes quite a different posture. The Superintendent claims that the district court correctly dismissed appellant's case because appellant had failed to request a hearing before the board. At trial, all appellees argued that appellant was not fired, but simply never hired, the legitimizing affidavit never having been signed. Under this theory, appellant had no procedural rights to exhaust. The district court having, however, impliedly rejected this theory and having held that appellant failed to exhaust his administrative remedies, the Superintendent has now reversed field and is claiming that the procedures available to a dismissed teacher under Maine law were available to but were not exhausted by appellant.

Under 20 Me.R.Stat.Ann. § 473(4), teachers may be dismissed "aft-er investigation, due notice of hearing, and hearing thereon * * * *" If the teacher is dismissed, the board is to give him "a certificate of dismissal and of reasons therefor." These procedures are self-starting: appellant is not required to request a hearing; he can be dismissed only after a hearing. None of these procedures were complied with. The Superintendent would therefore have us require appellant to request a hearing even though he is automatically entitled to such a hearing, without a request. The purpose of such automatic procedures is frustrated if the state is not compelled to adhere to them. If an individual's procedural safeguards are ignored, courts are not to inquire into whether or not the individual was prejudiced. *Cf.* McCarthy v. United States, 394 U.S. 459, 468–472, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); United States v. Power Benthiem, 434 F.2d 1031 (1st Cir., 1970). Similarly, parties are not required to object to errors when there is no procedure by which they can channel their objections. F.R.Civ.P. 46. In this case, assuming there was a remedy, the Superintendent cannot rely on appellant's failure to exhaust because he took steps to deny appellant access to the procedure. It was the Superintendent who dismissed appellant by not signing the affidavit instead of bringing his case to a hearing before the school board as required by law. Finally, the Superintendent, in addition to initiating the extra-statutory procedure, actively discouraged appellant from seeking a hearing by telling appellant that a hearing would do him no good. Having ignored appellant's procedural rights, the Superintendent can not now rely on exhaustion. Even the strongest judicial supporters of exhaustion in section 1983 actions acknowledge that the doctrine is not to be applied woodenly. *E. g.,* Eisen v. Eastman, 421 F.2d 560, 569 (2d Cir. 1969) (Friendly, J.).[2]

---

2. In the normal case we would most assuredly say that a board hearing must precede any attempt to invoke the jurisdiction of the federal court. We say

Exhaustion aside, appellant has made out a case falling within *Keefe v. Geanakos*, 418 F.2d 359 (1st Cir. 1969). The court below did not find that the case against the Superintendent was not supported by the facts, but rather that appellant was required by law to exhaust his administrative remedies. Differing with that ruling, we remand the case for further proceedings against the Superintendent alone.

In the district court, appellees counterclaimed against appellant, under a Maine statute, to recover the salary paid appellant during the period in 1969 when he taught without a certificate. After dismissing appellant's claim, the court also dismissed the counterclaim but without prejudice so that appellees could bring it in state court. The court below reasoned that the counterclaim was a matter of state law and could best be resolved in state court. Appellant argues that the district court should have dismissed the counterclaim with prejudice. But the district court's action was clearly within its discretion and, we think, wise under the circumstances. *See* United Mine Workers of America v. Gibbs, 383 U.S. 715, 724–725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Having reinstated appellant's complaint against the Superintendent, however, the dismissal of the counterclaim must be viewed from a slightly different perspective. Obviously the Superin-tendent alone cannot bring the counterclaim; if appellant is liable to anyone, it is to the school board, as a unit. Indeed, we have some doubt whether the counterclaim was proper in the first place since the members of the school board were sued as individuals, although in their representative capacities.[3] On the other hand, we assume that the question to be resolved at trial on remand is closely related to the counterclaim. For example, if the court should find that appellant was improperly dismissed and that the Superintendent would have otherwise signed the crucial affidavit, that finding would probably determine the question whether appellant was teaching illegally. Thus, adjudicating these issues at one time would be consistent with the approach to judicial economy underlying the Federal Rules of Civil Procedure.

We, therefore, decline to reverse the district court's disposition of the counterclaim but remand the case for further consideration in light of our reinstatement of the complaint against the Superintendent. If the court so chooses, it may decide to permit the school board or the appropriate party to intervene and counterclaim under F.R.Civ.P. 24, or it may devise some other procedure designed to facilitate an efficient resolution of the disputes.

Reversed in part and remanded for further proceedings consistent with this opinion.

---

this, not merely because of a reluctance to intervene unnecessarily in the administration of school matters but also because a school board has the right to expect that problems will be presented to it. It is a disservice to a board to prejudge what its eventual decision would be on a serious matter after full consideration or to insulate it from problems for which it has the final legal responsibility. Moreover, it would be unfair to subject the board members to liability under section 1983 without first affording them the opportunity to correct any deprivation of appellant's right resulting from the Superintendent's conduct. The record in this case suggests that, whatever personal opinions the board members might have harbored about the taste or judgment evidenced by the *Romeo and Juliet* assignment sheet, they were not unaccustomed to the legal restraints circumscribing their corporate decisions.

3. That is, appellant sought to recover from the individual members of the board, and not from the board as a whole. These individuals were sued in their representative capacities so that their alleged individual actions would have color of state law.