**Ruth SHIRCK, Plaintiff-Appellant,**

v.

**Robert S. THOMAS et al., Defendants-Appellees.**

**No. 18790.**

United States Court of Appeals, Seventh Circuit.

Sept. 2, 1971.

Rehearing Denied Sept. 24, 1971.

Joseph R. Napoli, Peoria, Ill., Richard J. Medalie, Alvin Friedman, Epstein, Friedman & Duncan, Washington, D. C., for plaintiff-appellant; Silberstein & Napoli, Peoria, Ill., of counsel.

Richard N. Molchan, Heyl, Royster, Voelker & Allen, Peoria, Ill., for defendant-appellees; Stephen H. Gunning, Peoria, Ill., of counsel.

Before SWYGERT, Chief Judge, FAIRCHILD and STEVENS, Circuit Judges.

FAIRCHILD, Circuit Judge.

This is an appeal from a summary judgment in favor of defendants in an action under 42 U.S.C. § 1983, concerning the nonrenewal by defendant school officials of a public high school teacher's contract at the end of her probationary period. The district court's decision is reported at 315 F.Supp. 1124 (S.D.Ill., 1970).

Plaintiff Ruth Shirck taught German at an Illinois public high school for two years, ending in the spring of 1969. A teacher's probationary period in Illinois is two consecutive school years of full time instruction. Ill.Rev.Stat. ch. 122, § 24–11 (1969). In March, 1969 two of the school administrators informed her that they were planning to recommend to the school board that her contract not be renewed for 1969–70. They explained the reasons for their decision which related to her performance in her work, particularly her failure to coordinate her teaching with that of the other German teacher so that students who needed to transfer at the end of a semester would not be handicapped. The affidavits are in conflict as to whether these problems had previously been discussed with her.

Plaintiff met with the president of the school board. The president, in his affidavit, said he advised her of the date and time of the board meeting at which the decision would be made, and assured her that "she would be given the opportunity to explain and support her position." Plaintiff stated in her affidavit that the president did not tell her she would have that opportunity. She did not attend the meeting, and the board voted not to renew her contract. The board secretary so notified plaintiff by letter April 1, 1969, again stating the reasons given earlier.

The district court concluded that plaintiff had made no showing that the decision of the board not to renew her contract deprived her of a right, privilege or immunity secured by the constitution and laws of the United States. The court noted that the board had given plaintiff notice of reasons for its action as required by Ill.Rev.Stat. ch. 122, § 24–11, and concluded that it was immaterial whether, as asserted by the board president, she had been advised that she would have the opportunity of explaining and supporting her position at the meeting of the board.

We recently decided, in Roth v. Board of Regents [1] that a non-tenured professor at a state university is constitutionally entitled, if he is not to be retained, to be offered a statement of the reasons why he is not to be retained and a hearing at which he can respond. If the same principle applies to a public high school teacher, it must follow that, although plaintiff here received a statement of reasons, summary judgment against her can not be sustained, because there is an issue whether she was offered a hearing at which she could respond.

We think the Roth principle applies to a public high school teacher as well as to a state university professor. As in Roth, the test is one of balancing "the precise nature of the government function involved" against "the private interest that has been affected by governmental action." [2]

The public school's interest in selecting its permanent teaching staff is the same as that of the state university in Roth. On the other side, the impact of the board's decision on the high school teacher's employability, professional reputation, and other career interests appears comparable to the impact on those interests of a college professor. The district court whose decision we affirmed in Roth has held that the same type of due process protection extends to public elementary and secondary school teachers.[3] The same type of due process pro-

1. 446 F.2d 806 (7th Cir., 1971).

2. See Cafeteria and Restaurant Workers Union, Local 473, A.F.L.-C.I.O. v. McElroy (1961), 367 U.S. 886, 894–895, 81 S.Ct. 1743, 6 L.Ed.2d 1230.

3. Gouge v. Joint School District No. 1 (W.D.Wis., 1970), 310 F.Supp. 984.

tection was required for a public high school teacher in Orr v. Trinter (S.D. Ohio, 1970), 318 F.Supp. 1041, 1046.

██ Accordingly, we hold that plaintiff here was not only entitled to the statement of reasons which she did receive, but also notice of a hearing at which she might respond to the stated reasons. Since she did not attend the meeting of the board, the record does not show that the board would not have granted her the kind of hearing required by *Roth*. In any event there is a dispute over whether she was notified that the board would hear her, and our decision in *Roth* requires that the summary judgment against her be reversed.

Plaintiff's brief makes it clear that she would have this court go further than we did in *Roth*.

██ First, plaintiff argues that the defendants could not rely on the reason stated with respect to failure to coordinate her teaching with that of her colleague unless the defendants could also show that they had defined in advance the standard of conduct to be followed and informed plaintiff of it. We think, however, that a teacher may be assumed to be competent in matters of classroom performance, and the school must have considerable freedom to refuse to retain a probationary teacher who does not meet imprecise, though nonetheless valid, standards of competence.[4]

Advance specification of standards was rejected by the district court in *Roth*, and we agree.

"[It] is important that in deciding whether to retain a nontenured professor, the university should enjoy the widest possible latitude consistent with protection against arbitrariness. * * * To provide this limited protection it is not necessary to require that the university enunciate in advance a code of conduct for professors, violation of which will result in nonreten-

tion and compliance with which will result in retention."[5]

Secondly, plaintiff seeks a type of hearing which would impose a greater burden on school administrators than did *Roth*. She lists a number of elements she believes required by due process and which she thinks would not have been fulfilled by the hearing allegedly offered her by the board. Among others, she contends that the hearing should be held before a tribunal independent of both the board and the administrators. The tribunal would be charged with finding the facts and the administrators or the board would have the burden of proof to establish the charges.

██ We see no reason why the hearing before the board would not have been adequate. With respect to allocating the burden of proof, the district court in *Roth* described the required hearing as follows:

"At such a hearing the professor must have a reasonable opportunity to submit evidence relevant to the stated reasons. The burden of going forward and the burden of proof rests with the professor. Only if he makes a reasonable showing that the stated reasons are wholly inappropriate as a basis for decision or that they are wholly without basis in fact would the university administration become obligated to show that the reasons are not inappropriate or that they have a basis in fact."[6]

The district court in *Roth* concluded that the requirement of statement of reasons and the type of hearing just described achieved the proper balance of interests, and we agreed. We said:

"We think the district court properly considered the substantial adverse effect non-retention is likely to have upon the career interests of an individual professor and concluded, after balancing it against the governmental

4. See Orr v. Trinter (S.D.Ohio, 1970), 318 F.Supp. 1041, 1044; cf. Drown v. Portsmouth School District (1st Cir., 1970), 435 F.2d 1181, 1186.

5. 310 F.Supp. 972, 983.

6. 310 F.Supp. 980.

interest in unembarrassed exercise of discretion in pruning a faculty, that affording the professor a glimpse at the reasons and a minimal opportunity to test them is an appropriate protection." [7]

Plaintiff has not persuaded us that a hearing before a wholly independent fact finding tribunal, with the burden of proof cast on the administrators or school board, as she suggests, would strike a more appropriate balance.

The judgment is reversed and the cause remanded for further proceedings.

STEVENS, Circuit Judge (dissenting).

Two distinctions are decisive. The first is the distinction between wise policy and a constitutional mandate; the second is the distinction between procedure and substance. Because these distinctions are blurred in the majority opinion in *Roth*, as well as here, I believe that these apparently reasonable and relatively innocuous decisions have in fact planted a pernicious seed.

Courtesy and effective communication between employer and employee are certainly desirable as a matter of policy. It may also be wise to follow different employment practices for teachers than for other public employees. And in some jurisdictions the frequency of irrational official conduct may warrant judicial review of a local school board's decisions. In a federal system, however, matters such as these are peculiarly the concern of state policy rather than federal constitutional law.

In the absence of contract or special legislation, I do not believe a schoolteacher has any greater constitutional right to public employment than a law clerk, a highway maintenance worker, a pilot, an election judge, or any other public servant. Nor do I find any constitutional distinction between an arbitrary refusal to hire a qualified applicant and an arbitrary refusal to retain a qualified worker. The potential impact of this case is unusually broad.

The majority finds in the due process clause a generalized protection against arbitrary termination of public employment. As a matter of procedure, the employee is entitled to a "glimpse" at the reasons for his nonretention and a "minimal opportunity to test them." As a matter of substance, his nonretention may not rest "on a basis wholly inappropriate in fact or on a basis wholly without reason."

If the individual has a right to the employment he seeks, or seeks to retain, procedural due process certainly requires that he be afforded an opportunity to be heard. And if the employee has a constitutional right to a hearing, even though "minimal" in character, the ultimate purpose of the hearing must be defined. Under *Roth*, more than a mere opportunity to try to persuade a school administrator to change his mind is involved. The ultimate purpose is to determine whether the administrative decision rests "on a basis wholly inappropriate in fact or on a basis wholly without reason."

The source of this requirement, as well as the source of the substantive right itself, is unclear. It is not derived from any statute, regulation or common law rule. If it is predicated on something other than judicial fiat, the due process clause itself must perform the dual function of creating the right to be protected and also prescribing its procedural safeguards. I believe this interpretation of the due process clause will significantly enlarge the power and responsibility of the federal judiciary.

Some years ago courageous and wise federal judges foresaw the potential harm that might flow from arbitrary actions by state government. On the assumption that the due process clause was more than a guarantee of fair procedure, they found a basis for substituting their views of sound policy for the "arbitrary" decisions of state officials. Whether or not

their policy judgments were correct, their expansive interpretation of the due process clause was fundamentally erroneous.

The analogy is apt because we have no guidelines other than the vague contours of the due process clause itself, and our own conceptions of appropriate policy, by which to judge the character of a school board's nonretention decision. In final analysis the "due process" decision will not turn on any question of fair procedure but on a judge's evaluation of the substance of the administrative determination. I believe judges are qualified by experience and training to evaluate procedural fairness and to interpret and apply guidelines established by others; I do not believe they have any special competence to make the kind of policy judgment that this case implicitly authorizes. The assumption that they do invites the reaction that was produced by decisions such as Lochner v. New York, 198 U.S. 45, 56, 25 S.Ct. 539, 49 L.Ed. 937.

I respectfully dissent.

Pell, Circuit Judge, dissented and filed opinion.