Mrs. Barbara B. SCHREIBER, Plaintiff,

v.

**JOINT SCHOOL DISTRICT NO. 1,
GIBRALTAR, WISCONSIN,**
et al., Defendants.

Civ. A. No. 70-C-270.

United States District Court,
E. D. Wisconsin.

Jan. 10, 1972.

Richard L. Cates, Madison, Wis., for plaintiff.

Roger Pinkert, and Sven V. Kirkegaard, Sturgeon Bay, Wis., for defendants.

REYNOLDS, Chief Judge.

This civil action challenging defendant School Board's dismissal of plaintiff as a teacher is before the court on defendants' motion for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. At the hearing on that motion, plaintiff moved orally for summary judgment, requesting $100,000 damages ($50,000 as punitive) and an order of reinstatement. The matter was taken under advisement.

From the pleadings, depositions, and affidavits on file and the representations of counsel, it appears that the following facts are undisputed. Mrs. Schreiber was employed by the defendant School Board of the Gibraltar Area Schools, Fish Creek, Wisconsin, from June 1968 until December 1, 1969. At the time of the events at issue in this case, her employment was pursuant to a one-year contract with the Board of Education. In May 1968, plaintifff had become engaged to Robert Schreiber. They planned to be married in September 1969 but were forced to delay their wedding for some two months, since on account of a former marriage Mr. Schreiber had to obtain permission of the court to remarry. The issue was docketed later then they had expected, and they were not married until November 6, 1969.[1]

Mrs. Schreiber had been living with a family during the summer of 1969, an arrangement which was to end by September 1. At that time her fiance offered her the use of one of the rooms in his house until she could find a place of her own or until, in the event that they could obtain a court date quickly, the time of their marriage. Plaintiff agreed to this arrangement and lived in Mr. Schreiber's home from September 1 until September 30. By the end of the month she had found an apartment a few miles out of town where she lived until their marriage on November 6, 1969.

On October 8, 1969, having heard a rumor to the effect that a petition was being circulated in an attempt to have her fired, plaintiff called the principal of the school in which she taught to make an appointment. On the next day she met with the principal and with the school district administrator to tell them of the rumor, of her plans to marry Mr. Schreiber, of the circumstances under which she had lived in his house, and of the fact that she was now living in an apartment of her own. The administrator responded that although the matter might be discussed in executive session at the School Board meeting, nothing definite would be done until they had an opportunity to meet with her.

On October 24, 1969, plaintiff received a letter dated October 22, 1969, censuring her for what the Board of Education denominated "unprofessional conduct." The letter advised her that the Board, pursuant to a discussion at an October 14 Board meeting, had authorized the reprimand. As a result of this letter, plaintiff again arranged to meet with the principal to discuss the matter. She was told that the letter was simply an indication that the fact of her living in Mr. Schreiber's house had been discussed. That night the Board of Education, in executive session, voted to request Mrs. Schreiber to tender her resignation effective December 1, 1969.

---

1. Mr. Schreiber died some six months later.

On October 29, 1969, Mrs. Schreiber was summoned to the administrator's office and given a letter stating that the Board requested her resignation. She requested a hearing and was told that she would have to submit the request in writing. Although she did so, a hearing was never granted.

In connection with the Board's request of Mrs. Schreiber that she tender her resignation, it should be noted that it is alleged and uncontested that plaintiff's conduct did not affect her performance as a teacher, that there was no disruption in the school as a result of her behavior, that the dismissal was for no reason other than her month's stay in the Robert Schreiber home, and that her conduct was not in violation of any rule or regulation of the defendant School Board.

Plaintiff refused to resign, and on November 11, 1969, again in executive session, the Board of Education decided to terminate her employment.

■■ Jurisdiction is present. 28 U.S.C. § 1343(3), (4); 42 U.S.C. § 1983. Although defendants' motion for summary judgment urges that the court is without jurisdiction on the grounds that defendants did not act under color of state law, and that defendants' action was not state action within the meaning of the Fourteenth Amendment to the United States Constitution, that contention is without support. Defendants did act "under color of law" as that term has been established by long use: "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). Accord, e. g., Monroe v. Pape, 365 U.S. 167, 184, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). It is equally well established that a school board is an arm of government whose action is state action and thereby subject to constitutional restraints. West Virginia State Board of Education v. Barnette, 319 U.S. 624, 637, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).

Defendants base their motion for summary judgment on three major contentions: (1) that the School District and School Board are not "persons" within the meaning of 42 U.S.C. § 1983; (2) that the School District, School Board, and their officials enjoy common law immunity; and (3) that there is no Wisconsin law which requires that a teacher be afforded a hearing upon termination of employment.

■ (1) Defendants contend that defendant School District and defendant School Board, as political subdivisions of the state, cannot be sued under 42 U.S.C. § 1983 as they are not "persons" within the meaning of that Act. Defendants cite Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), for that proposition. This court, however, is controlled by the Seventh Circuit decisions which have refused to hold the doctrine of *Monroe* applicable to actions in which equitable relief is sought. Schnell v. City of Chicago, 407 F.2d 1084, 1086 (7th Cir. 1969); Adams v. City of Park Ridge, 293 F.2d 585, 587 (7th Cir. 1961).

Defendants are correct that for the purposes of § 1983, a municipal corporation is not to be considered a "person" with respect to a request for damages.

(2) Defendants contend that the School District, School Board, and their officials enjoy common law immunity. Their position is that those organizations and individuals acted within their discretion and in good faith and are thus immune from suit.

■ With respect to the equitable relief sought, defendants' contention cannot be upheld. The lower court opinion which was affirmed on appeal in Roth v. Board of Regents of State Colleges, 446 F.2d 806 (7th Cir. 1971), dealt with that issue, and in light of the Seventh Circuit's statement that it would avoid unnecessary repetition and rely on the district court opinion, our discussion below draws upon the lower court's analysis.

**748**

The district court maintained in Roth v. Board of Regents of State Colleges, 310 F.Supp. 972, 975 (W.D.Wis.1970), that the purpose of common law immunity enjoyed by the judiciary and legislature, and which was sought to be extended, "is to preserve the integrity and independence of those bodies, and to insure that judges and legislators will act on their free, unbiased convictions, uninfluenced by apprehensions of consequences. Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); * * *. Such considerations do not support extending, nor have courts extended, the doctrine to shield officials from the type of equitable relief here requested."

 Nor is the doctrine of common law immunity an absolute bar to the granting of legal relief but rather merely a partial bar, dependent on good faith action. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir. 1968). The record in the case at bar, however, does not support a clear finding of bad faith action such as would be required if plaintiff's motion for summary judgment as to damages were to be granted.

 It should be noted, however, that although plaintiff's request for damages cannot be sustained—as discussed above with respect to the § 1983 and the good faith aspects of the common law immunity issues—she is entitled to recover back pay incident to an order of reinstatement. Such a money judgment in her favor would be considered equitable rather than legal and, therefore, not barred even under § 1983. Smith v. Hampton Training School for Nurses, 360 F.2d 577, 581, fn. 8 (4th Cir. 1966); Harkless v. Sweeny Independent School District, 427 F.2d 319, 321 (5th Cir. 1970); Smith v. Board of Education of Morrilton School District No. 32, 365 F.2d 770, 783 (8th Cir. 1966); see also N.

L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 47, 48, 57 S.Ct. 615, 81 L.Ed. 893 (1937).

 (3) Defendants maintain that there is no Wisconsin law which requires that a teacher be afforded a hearing upon termination of employment and that, therefore, none of plaintiff's rights have been abridged. The presence or absence of Wisconsin law is not, however, the issue at hand. In a similar case involving the dismissal of two nontenured teachers, the court in Gouge v. Joint School District No. 1, 310 F.Supp. 984, 989 (W.D.Wis.1970), dispensed with that contention:

" * * * The issue presented in this action is whether the defendants met the minimal requirements of substantive and procedural due process required by the Fourteenth Amendment of the United States Constitution in coming to the decision not to renew the plaintiffs' contracts. Satisfaction of the requisites of state law is not determinative of that question." [2]

As to what constitute the requisites of procedural due process in this area, the Seventh Circuit in *Roth*, supra, held that a nontenured university professor with respect to whom a decision not to retain had been made ought to be afforded "a glimpse at the reasons and a minimal opportunity to test them." Shirck v. Thomas, 447 F.2d 1025 (7th Cir. 1971), dealing with the nonrenewal of a public high school teacher's contract at the end of a probationary period, explicitly extended *Roth's* coverage to the high schools. Citing with approval *Gouge*, supra, and Orr v. Trinter, 318 F.Supp. 1041 (S.D.Ohio 1970), the court held that the plaintiff was entitled to a statement of the reasons for the nonretention decision and notice of a hearing at which to respond to the stated reasons.

*Roth* and *Shirck* admittedly both deal with nonrenewal decisions, while in the

2. No opinion is expressed as to whether or not the issue of right to privacy is involved here and, if it is, if the state's interest here compelled such interference with plaintiff's personal life. Babbitz v. McCann, 306 F.Supp. 400 (E.D.Wis. 1969). This decision rests on the procedural rights due a teacher in Mrs. Schreiber's position.

case at hand dismissal is at issue. Far from making *Roth* and *Shirck* inapplicable, that fact makes adherence to their reasoning all the more compelling. The *Roth* decision rests on a balancing test. On the scales are "the substantial adverse effect non-retention is likely to have upon the career interests of an individual professor" and "the governmental interest in unembarrassed exercise of discretion in pruning a faculty * * *." Roth v. Board of Regents of State Colleges, 446 F.2d 806, 809 (1971). The court decided that the professor's interest in preserving his professional reputation from the negative inferences that might be drawn from nonretention weighed somewhat more—at least enough more to mandate granting him certain minimal due process protections —than did the opposing governmental interests. It is clear that the potential damage to a teacher's career as a result of dismissal is as great, if not greater, than the adverse effects of contract non-renewal. For that reason, at least the minimal due process protections made available to the plaintiffs in *Roth* and *Shirck* are available to Mrs. Schreiber.

For the above reasons, I believe that the defendants' motion for summary judgment should be denied and that the plaintiff's motion for summary judgment should be granted.