**Ivadell CARPENTER, Plaintiff,**

v.

**CITY OF GREENFIELD SCHOOL DISTRICT NO. 6 et al., Defendants.**

**Civ. A. No. 70–C–566.**

United States District Court,
E. D. Wisconsin.

May 21, 1973.

James J. Caldwell, Waukesha, Wis., for plaintiff.

Warren L. Kreunen, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This civil rights action concerns the dismissal of a teacher from her employment in a public grade school in Greenfield, Wisconsin. The plaintiff teacher contends the defendant School Board did not follow constitutionally required procedures in dismissing her during the term of her existing contract. She seeks $205,427.69 in damages, including $100,000 in punitive damages. Jurisdiction arises under 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

I find that plaintiff received an adequate opportunity to be heard on one of the reasons for which she was dismissed, namely, her use of corporal punishment, and that dismissing her on the basis of that reason alone was not unreasonable. I also find that she did not receive an adequate opportunity to be heard on other reasons given for her dismissal, such as screaming at pupils. Upon these findings I conclude that plaintiff is not

entitled to recover back pay, punitive damages, or compensatory damages for injury to her health, but that she may be entitled to a further hearing to clear her reputation of any false charges which she was not given an adequate opportunity to refute. Accordingly, defendants' motion for summary judgment is granted in part and denied in part.

The following material facts are not disputed. In August 1967, the plaintiff Ivadell Carpenter and the defendant School Board of the City of Greenfield, School District No. 6 ("School Board"), entered into a contract which provided that plaintiff was to teach from August 1967 until June 1968 for a stated salary. During October and November of 1967, Clyde Wallenfang, director of instruction for the School District, received numerous written and oral reports criticizing plaintiff's performance as a teacher on several grounds. He discussed the contents, but not the source, of these reports with the plaintiff. The school principal, elementary supervisor, school psychologist, and school social worker also reviewed the contents of these reports with the plaintiff. Wallenfang's subsequent discussions with plaintiff revealed that she felt corporal punishment was necessary and that she had physically punished some children as reported.

On November 30, 1967, Wallenfang met with plaintiff in the office of Principal Gerald Rakowski. Wallenfang told plaintiff she should resign and he would recommend that the School Board accept her resignation at their regular meeting on December 4, 1967. Wallenfang also told plaintiff that if she did not resign, he would recommend that the School Board discharge her. During this two-hour conference Wallenfang stated some of the reasons for his actions. Plaintiff denied some of the reasons but admitted striking the children. Wallenfang told plaintiff she would be on the agenda for the School Board meeting on December 4, 1967, and could discuss her situation with the Board. On December 1, Wallenfang sent plaintiff a letter [1] which was to serve as a written summary of the conference held on November 30, 1967. According to the terms of this letter, plaintiff was suspended at the end of the teaching day on December 1, 1967.

At the School Board meeting on December 4, 1967, the Board considered the matter during its executive session. Based upon the report he had received and his personal discussions with the plaintiff, Wallenfang recommended that the Board terminate plaintiff's employment. No other evidence supporting the reasons was offered. Plaintiff appeared at this session and was given an opportunity to make a presentation on her behalf. There is no indication that plaintiff was given a written statement of the charges against her or an opportunity to confront those who submitted the reports to Wallenfang. At the close of the meeting, a motion was unanimously approved to terminate plaintiff's contract with the School District effective December 6, 1967, based on the reasons presented by the school administration, if she had not already resigned.

On December 6, 1967, plaintiff delivered her letter of resignation to Clarence Allender, superintendent of the schools. Her letter stated:

> "I feel that I have not had an adequate opportunity to present the various facets of this problem. I will appreciate a meeting with a diplomatic presentation of my side of the problem. * * *
>
> "It is with a definite feeling of unfairness that I submit this resignation. * * * "

Allender and Wallenfang then met with plaintiff and arranged for her to have a

---

1. "I have reviewed the written observation of your teaching and would recommend that you resign as a teacher of the fifth grade at Hillcrest School. I will recommend to our School Board that they accept your resignation at their next regular meeting which will be held on December 4, 1967."

second meeting before the Board on December 18, 1967. At this closed session of the Board, Charles Frailey, a representative from the Wisconsin Education Association, presented plaintiff's position and indicated that the conflict reflected a difference in teaching philosophies. Allender stated the administration's position. The director of the Board asked for a vote to change the previous Board action regarding plaintiff, and there being no vote, the previous action stood.

Plaintiff has never contended that her dismissal was in retaliation for conduct protected by the First or Ninth Amendments of the Constitution. Her claim to back pay rests solely on the defendants' alleged failure to follow fair procedures. Specifically, she contends that defendants should have provided her with a written statement of the reasons for dismissing her and an opportunity to confront those who made the reports on which the reasons were based.

■■ Defendants' motion for summary judgment urges that the court is without jurisdiction because this is really a state breach of contract action. But the plaintiff does not allege breach of contract. She alleges that defendants acting under color of state law have deprived her of rights secured to her by the due process clauses of the Fifth and Fourteenth Amendments. State law does not determine this question. Gouge v. Joint School District No. 1, 310 F. Supp. 984 (W.D.Wis.1971). Defendants' contention that 42 U.S.C. § 1983 grants jurisdiction to deal with conspiracies to deny equal protection but not due process must also be dismissed. While defendants are correct that 42 U.S.C. § 1985 grants jurisdiction only to deal with conspiracies to deny equal protection, 42 U.S.C. § 1983 grants jurisdiction for conspiracies to deny due process when the conspiracy was allegedly carried into effect. Lewis v. Brautigam, 227 F.2d 124 (5th Cir. 1955).

Defendants base their motion for summary judgment on the following contentions: (1) the School Board and School District are not "persons" within the meaning of 42 U.S.C. § 1983; (2) no activity is alleged which constitutes individual action on the part of any defendant; (3) plaintiff has not met the burden of showing that the actions of defendants denied her procedural due process.

■■ Defendants contend this action should be dismissed against the School District and the School Board since as municipal corporations they are not "persons" within the meaning of 42 U.S.C. § 1983. Monroe v. Pape, 365 U.S. 167, 191, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Cf. Lucia v. Duggan, 303 F. Supp. 112, 119 (D.Mass.1969). In this circuit, however, municipal corporations are considered "persons" within the meaning of § 1983 when equitable relief is sought, though they are not so considered when "legal" relief is sought. Schnell v. City of Chicago, 407 F.2d 1084 (7th Cir. 1965); Adams v. City of Park Ridge, 293 F.2d 585 (7th Cir. 1961); United States ex rel. Lee v. State of Illinois, 343 F.2d 120 (7th Cir. 1965); Sanberg v. Daley, 306 F. Supp. 277 (N.D.Ill.1969). Hence, plaintiff's requests for $100,000 in compensatory damages for injury to her health and for an additional $100,000 in punitive damages are barred. Her request for $5,427.69 in back pay which was lost as a result of her dismissal is not barred, however. In Schreiber v. Joint School District No. 1, Gibraltar, Wisconsin, 335 F.Supp. 745, 748 (E.D.Wis.1972), this court held that a money judgment of back pay would be considered equitable rather than legal and, therefore, was not barred even under § 1983.

■ Defendants maintain that the complaint should be dismissed as to persons named in their individual capacities because no activity is alleged which constitutes individual action on the part of any defendant. I agree. The complaint merely alleges that the individual members of the School Board acting in con-

cert did compel plaintiff to resign without providing procedural safeguards:

"* * * the gravamen of the complaint is that they acted improperly as a corporate body in discharging the plaintiff. No individual action by any member of the board is complained about by the plaintiff. * * * the complaint does not state a cause of action against the individual members of the board, and they are entitled to dismissal as individuals. * * * " Abel v. Gousha, 313 F. Supp. 1030, 1031 (E.D.Wis.1970).

Defendants contend that they have satisfied the minimal requirements of procedural due process set forth in Shirck v. Thomas, 447 F.2d 1025 (7th Cir. 1971). *Shirck* does not provide procedural due process standards for the dismissal of teachers because the case dealt with a teacher whose contract was not renewed. The U. S. Supreme Court in Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L. Ed.2d 548 (1972), made it clear that different interests are implicated when a school board fails to renew a contract and when, as here, the board dismisses a teacher during the term of her contract. See also Wiesman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952). Though a school board may act summarily in failing to renew a contract, it may not deprive a teacher of her interest in completing the term of her contract, an interest recognized by state statute, Wis.Stats. § 118.21 (1969), without providing some procedures to guard against mistake and discourage caprice.

The specific procedures which due process requires depend upon a balancing test. The teacher's interest in completing the contract term must be compared to the school administration's interest in being able to discharge teachers summarily. Board of Regents v. Roth, supra; Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Cafeteria & Restaurant Workers Union, Local 473, AFL–CIO v. Mc-

Elroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring).

The teacher's interest is substantial. Since teachers only begin regular employment at the beginning of the school year, a teacher dismissed during the school year must, at the very least, wait several months to begin teaching again. Moreover, a teacher granted a one-year contract is also likely to have incurred greater expenses in reliance on remaining employed throughout the contract year than an ordinary employee. And, of course, dismissing a teacher abruptly during the year rather than simply failing to renew her contract leaves a stigma that clouds her professional status and limits her future opportunities. Cf. Birnbaum v. Trussell, 371 F.2d 672, 678 (2d Cir. 1966); Lucia v. Duggan, 303 F.Supp. 112, 118 (D.Mass. 1969). Finally, the fact that the proceeding before the School Board is the only opportunity for review of her dismissal available to the teacher strengthens her interest in making that opportunity meaningful. Compare, Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1970).

The school's interest in unfettered control of the quality of teaching is also significant. Avoiding cumbersome, time-consuming, and often distasteful procedural requirements does not only save money. Cafeteria & Restaurant Workers Union, Local 473, AFL–CIO v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); Ahern v. Board of Education of the School District of Grand Island, 327 F.Supp. 1391, 1398 (D.Neb.1971); contra McDonough v. Kelly, 329 F.Supp. 144 (D.N.H.1971). As other courts have recognized, the reasons for concluding that a teacher's performance does not meet the profession's standards are often difficult, if not impossible, to articulate with enough specificity to allow for a response. See Roth v. Board of Regents of State Colleges, 310 F.Supp. 972, 978 (W.D.Wis.

1970). And, of course, the more difficult and distasteful the dismissal of teachers becomes, the more reluctant administrators will be to dismiss even the poorest teachers. Yet one purpose of providing a probationary period of teaching before tenure is granted is precisely to allow administrators some freedom to remove poorer teachers from the school system and to examine as many aspiring teachers as possible.

■ The balancing of these interests must begin with the observation that the courts are not the proper agency to administer the school system. Judges simply lack the information and the expertise needed to sit in review of a school board's personnel decisions. A court's scope of review must, therefore, be so confined that only patently arbitrary or baseless dismissals are invalidated.[2] As long as one of the reasons put forth by the administrators has some basis in fact, is reasonably related to a valid interest of the School Board, and is sufficiently serious to make dismissal reasonable, the School Board's decision must be upheld. And as long as the teacher had an adequate opportunity to be heard on just one such reason, the School Board's decision should survive an attack on procedural grounds as well.

■ The pleadings and affidavits indicate that the defendants in this case granted plaintiff an adequate opportunity to be heard on the charge of using corporal punishment. Defendants notified plaintiff orally that her use of corporal punishment was the major reason for her forthcoming dismissal. Under the circumstances I believe this notice was adequate. Since plaintiff then admitted her use of corporal punishment, I cannot say the defendants were required to indicate the source of the charge. The two hearings which plaintiff had before the Board gave her an adequate opportunity to state why she felt justified in using corporal punishment or why she felt her use of it was not a matter of the Board's concern. On this issue there were, of course, no witnesses to confront or cross-examine. As her representative at the second hearing explained, the conflict reflected an honest difference in teaching philosophies. Since I find, in addition, that dismissing plaintiff on this charge alone was not unreasonable, her dismissal should not be invalidated.

■ Other charges were made against plaintiff, however, which she denied. Among other things she was accused of screaming at her pupils, inflicting degrading punishments, failing to prepare lesson plans, and failing to abide by various minor rules of the school. Upon balancing the interests of the parties, I believe that when charges such as these are made and denied, the school must bear the burden of indicating the source of the charges so that an effective response is possible. Otherwise it will be left to the reviewing court to determine whether the charges have a basis in fact. Moreover, the teacher can hardly disprove charges such as these, which are vague and unspecific as to time and place, when she does not even know the events from which they arose. In this case the administrators merely stated that they had received reports from others which supported the charges, and they refused to name those who gave the reports. Although hearsay reports such as these are inadmissible in a court of law, I certainly do not hold that they are inadmissible in administrative hearings like the one in this case, for such hearings need not conform to the standards of judicial or quasi-judicial trials, and flexibility and informality should often characterize them. Moreover it is possible that even

---

2. The court's scope of review is, of course, much greater if the dismissal is alleged to be in retaliation for the exercise of First or Ninth Amendment rights. The court must then make an independent determination of the actual reason for the dismissal. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed. 2d 811 (1967). Cf. J. P. Stevens & Co. v. Labor Board, 380 F.2d 292, 300 (2d Cir. 1967) ; N. L. R. B. v. L. E. Farrell Co., 360 F.2d 205, 208 (2d Cir. 1966).

reports of unnamed observers may by referring to a specific occasion allow the teacher an adequate opportunity to explain her conduct on that occasion. When reports amount to blanket conclusions which leave the teacher no meaningful chance to reply and when, as here, the reports purport to be the sole source of disputed factual charges, the hearing on those charges is not adequate unless the source of the reports is disclosed.

 It is not clear at this stage of the litigation which charges plaintiff disputed and how detailed the reports leading to those charges were. If plaintiff disputed charges that were likely to injure her reputation, and if her hearing on those charges was not adequate, fairness requires that she now be given an adequate hearing even though, as I have indicated, her dismissal will not be invalidated. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573 n. 12, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).[3] Further fact-finding is necessary to determine plaintiff's right to this limited remedy.[4] Since none of the charges against her amounted to a conclusive evaluation of her professional competence, the only charges that might have injured her reputation were those which suggested cruelty or emotional instability. See Whitney v. Board of Regents of the University of Wisconsin, D. C., 355 F.Supp. 321 (filed March 22, 1973).

This case illustrates the conceptual and practical difficulties presented by the emerging developments in procedural due process. It has often been argued in the past and will no doubt be argued again that when, as here, the substantive result appears fair, courts should not interfere with that result because the procedures followed were not. With more merit it has been argued that procedural protection is necessary only when it is alleged that administrative action has been taken in retaliation for the exercise of First or Ninth Amendment rights, for then a court must determine on review the true reason for the administrative action. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1967). The Supreme Court, however, has rejected both arguments. Morrissey v. Brewer, 405 U.S. 951, 92 S.Ct. 1179, 31 L.Ed.2d 229 (1972); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1970); Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1970); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1970). It has held that due process requires the government to provide an adequate opportunity to be heard before a wide variety of interests are denied or withdrawn. But in doing so it has left the lower courts with the burden of determining what due process requires in each particular context, and it has created a host of uncertainties concerning, for example, the retroactivity of procedural requirements and the proper remedy for their denial. Consequently, cases such as this often present questions of greater difficulty than the incident involved would suggest.

It is therefore ordered that defendants' motion for summary judgment denying plaintiff's requests for back pay, compensatory damages, and punitive damages be and it hereby is granted.

3. Fairness also requires that plaintiff be allowed to recover damages for the injury, if any, to her reputation which arose because she was previously denied a chance to show that the charges were incorrect. But since the defendants are not "persons" within the meaning of 42 U.S.C. § 1983 in an action for damages that remedy is not available. See United States ex rel. Lee v. State of Illinois, 343 F.2d 120 (7th Cir. 1965).

4. If plaintiff pursues this remedy, it will have to be determined which charges she denied. A further hearing is then warranted only if the court finds that at least one of those charges was likely to injure her reputation and that the hearing she received on the charge was not adequate.

It is further ordered that plaintiff shall have thirty days from the filing date of this order to indicate which charges made by the defendants she has denied and to request a further hearing before the School Board on those charges.