**Mrs. Saxon GOUGE, Plaintiff,**

v.

**JOINT SCHOOL DISTRICT NO. 1, Towns of Winter, Draper, Ojibwa, Meadowbrook, Radisson, Couderay, Villages of Radisson & Couderay, Sawyer County, Town of Hubbard, Rusk County, the Board of Education of Joint School District No. 1, et al., and Stanley Gutowski, Chester A. Boncler, Aubrey Magnuson, Edward Anderson, William Boecker, Jr., Roy Swedberg, Mrs. Lorraine Shydlowski, Mrs. Dorothy Pasanen and Mrs. Hazel Arntz, individually and as members of said Board of Education; and Fred E. Johnson, individually and as Administrator of Joint School District No. 1, Defendants.**

**Mrs. Viola G. KLEIN, Plaintiff,**

v.

**JOINT SCHOOL DISTRICT NO. 1, Towns of Winter, Draper, Ojibwa, Meadowbrook, Radisson, Couderay, Villages of Radisson & Couderay, Sawyer County, Town of Hubbard, Rusk County, the Board of Education of Joint School District No. 1, et al., and Stanley Gutowski, Chester A. Boncler, Aubrey Magnuson, Edward Anderson, William Boecker, Jr., Roy Swedberg, Mrs. Lorraine Shydlowski, Mrs. Dorothy Pasanen and Mrs. Hazel Arntz, individually and as members of said Board of Education; and Fred E. Johnson, individually and as Administrator of Joint School District No. 1, Defendants.**

**Nos. 69–C–166, 165.**

United States District Court,
W. D. Wisconsin.

March 16, 1970.

Richard L. Cates, Robert C. Kelly, Bruce F. Ehlke, John H. Bowers, Madison, Wis., for plaintiffs.

James F. Clark, Ronald J. Kotnik, Madison, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

These are civil actions brought to challenge the defendants' decisions not to retain plaintiffs Gouge and Klein as as teachers in Joint School District No.

1. Each plaintiff seeks compensatory damages, punitive damages and an order compelling reinstatement in her teaching position with the defendant School District. Defendants' motions for summary judgment dismissing the actions are presently before the court.

No. 69–C–166 (Gouge) and No. 69–C–165 (Klein) present similar factual situations. Identical relief is sought on identical grounds. The cases have been briefed and argued together. For the purpose of deciding these motions, the cases will be discussed and decided together.

From the pleadings and affidavits on file in No. 69–C–166 (Gouge), I find that there is no genuine issue as to the following material facts:

Gouge was retained as a teacher by the defendant Board of Education for the school years 1963–1964 through 1968–1969 on a series of one-year contracts. At a meeting of the Board held on February 25, 1969, defendant Johnson, Administrator of Joint School District No. 1, recommended nonrenewal of Gouge's contract for the 1969–1970 school year. Johnson informed the Board of the grounds upon which his opinion was based: Gouge "is and has been for some time in a relatively poor state of physical health"; Gouge "failed and evidenced inability to plan and conduct the elementary school vocal music program"; Gouge had exceeded the sick leave available to her under School Board policy for the 1968–1969 school year and the two years previous; Gouge "repeatedly left the class she was conducting for short periods without explanation"; the School District's vocal music program at the elementary level while under Gouge's direction was not "enhanced and expanded" but reluctantly "cut back and curtailed on several occasions" in consideration of Gouge's health; Gouge's "failure and apparent inability to perform and conduct the teaching duties assigned to her has a definite, undesirable and adverse effect on the elementary music

program of the school and has caused significant disharmony in the operation of the overall school program of the defendant School District." By unanimous vote, and for the reasons just stated, the Board decided to consider the nonrenewal of Gouge's contract. The Board directed Johnson to give Gouge written notice that the Board was considering nonrenewal and, further, to inform her of her right to a private conference with the Board on the matter. On February 26, 1969, Johnson gave such written notice to Gouge. By letter dated February 28, 1969, directed to Johnson, Gouge requested a private conference with the Board and also a written enumeration of the reasons for the Board's decision to consider nonrenewal. Johnson responded to Gouge's request by a letter dated March 4, the essence of which was:

"Continued curtailment of the music program will never enhance the music program. Your health, as I have observed in the past three years, has affected the vocal music program. This health problem appears to grow more severe each year, which has taken its effect on the program, the number of classes you can meet with, and the handling of youngsters in the program."

On March 11, 1969, a conference between Gouge and the Board was held. Johnson and his staff were present for the conference and were prepared to present the Board and Gouge with information and facts in support of the reasons for considering nonrenewal; Gouge asked that Johnson and his staff be requested to leave the room and not participate in the discussion; and Gouge's request was granted. Following the conference, and after further discussions with Johnson and his staff, the members of the Board present voted unanimously, for the reasons which had been presented to the Board by Johnson on February 25, not to renew Gouge's contract.

There is dispute as to what occurred at the March 11 conference between Gouge and the Board. The Board members allege, by affidavit, that Gouge was presented with the reasons why nonrenewal was being considered, which reasons were substantially the same as those given by Johnson to the Board at its meeting of February 25, 1969; that Gouge was given an opportunity to and did present her side of the case; and that upon conclusion of the conference Gouge voluntarily left the conference without being asked to do so. Gouge alleges, by affidavit, that "at the outset of the conference she asked the members of the Board why they were considering terminating her employment"; that none of the Board members answered; that none of the Board members advised her of what they were considering as a basis for terminating her employment; that one Board member inquired "as to whether defendant Johnson had advised her of the reasons"; that she acknowledged receiving Johnson's letter of date February 26, 1969; that she was asked to read the letter in order to advise the Board of its contents (and apparently did so); that one Board member said that they had not received a copy of the letter and did not know of its contents; that Gouge attempted to explain why the local education association had recommended changing the program, but she was informed that the only thing that was important was the condition of her health; that she then explained that she had recently been examined by doctors who all said her condition was good; and that the meeting then ended. These allegations by Gouge are supported by an affidavit by a representative of the Wisconsin Education Association who accompanied Gouge to the March 11 meeting.

From the pleadings and affidavits on file in No. 69–C–165 (Klein), I find that there is no genuine issue as to the following material facts:

Klein had been employed as a teacher by defendant school district for 18 years, on a series of one-year contracts. For the last two years of her employment she was responsible for the science program in the Winter middle school. At the February 25, 1969, meeting of the School Board defendant Johnson recommended that nonrenewal of Klein's teaching contract for the 1969–1970 school year be considered for the following reasons: Klein had been "unable to adapt to departmentalized team teaching"; Klein did "not have the knowledge or training to efficiently or effectively teach [science] as a member of the teaching team handling the departmentalized middle school instruction program"; Klein had "failed to follow or adopt many of the practices and procedures developed, recommended and put into practice by the science curriculum committee of the defendant School District Staff although requested to do so by the Administrative Staff of the defendant School District"; "[c]ontrary to Administrative Staff recommendations, [Klein] has persisted in following the traditional method of teaching a self-contained and oriented program in her classes which results in overlap and omissions in the instruction of science and other middle school courses"; Klein "is a self-oriented teacher and does not communicate with her fellow team teachers in the middle school as to correlation of planning, ideas and techniques" which causes "friction and disharmony among the middle school staff"; Klein's failure to correct the deficiencies has had a "definite, undesirable and adverse effect on the middle school science program of the School District and has caused significant disharmony in the operation of the total middle school program". After presentation and discussion of those reasons, and on the basis of those reasons, the Board voted unanimously to consider nonrenewal of Klein's contract. The Board directed Johnson to advise Klein that the Board was considering nonrenewal of her contract and that she could request a private

conference with the Board. Johnson complied with the Board's directive in a letter to Klein dated February 26, 1969. In a letter dated March 6, 1969, and addressed to Johnson, Klein requested a private conference with the Board, and also asked to be furnished with the reasons prompting the Board to consider her nonrenewal. In response to the latter request, Johnson made the following comments in a letter to Klein dated March 7, 1969:

"It has been clearly established to the Board of Education that you are a willing teacher. You have attempted to continually upgrade the middle school science program to the best of your ability. However, it is felt that you are working in an area that is not your strength and consequently the science program has not progressed at the rate expected.

"Personality problems have also existed in the middle school. This program has been a barrier in seeing educational advancement progress at a desirable rate. A newly structured program requires communication of ideas of all staff members involved. This has been non-existent, which has eliminated the team-effort in structural growth that has been needed. It is very obvious that you have difficulty in working with your co-workers."

A private conference between Klein and the Board was held March 11, 1969. Klein was accompanied by Jermitt Krage, a former teacher who was then employed by the Wisconsin Education Association. Members of the administrative staff of the defendant School District were present for the conference and prepared to present information and facts in support of the reasons for considering nonrenewal of Klein's contract. Immediately prior to the convening of the conference she requested that the Board ask the administrative staff to leave the room and not participate in the discussion. The request was granted. Following the meeting, the Board conferred with Johnson and members of his staff, and then decided, by a vote of seven to one, and for the reasons which had been presented to it by Johnson on February 25, not to renew Klein's contract for 1969–1970.

Defendant Board members represent that at the conference, Klein was given reasons, substantially as set forth in Johnson's report to the Board at their meeting of February 25, 1969, why nonrenewal of her contract was being considered. It is further represented that Klein was given an opportunity and did present her side of the case. By their affidavits Klein and Krage allege that the course of the meeting was different. They allege that Krage asked the members of the Board why they were considering nonrenewal. No Board member answered or appeared to know the reason. One member then asked Klein to read aloud the letter he understood she had received from defendant Johnson. The letter was read and one of the Board members stated that the issue involved personality problems among co-workers in Winter middle school. Mr. Langham, one of Klein's co-workers, stated to the Board that there were no problems among the co-workers at the school. Krage asked the basis for the allegations that the science program was not progressing as expected. One Board member replied in effect that they relied on their administrators in such matters. The conference then concluded.

The complaints allege sufficiently that the defendants, acting under color of state law, have deprived the plaintiffs' rights secured to them by the due process clause of the Fourteenth Amendment. Jurisdiction is present. 28 U.S.C. § 1343(3), (4); 42 U.S.C. § 1983.[1]

1. 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Defendants contend that plaintiffs have no right to renewal of their teaching contracts under the substantive law of Wisconsin: The plaintiffs were employed for the 1968–1969 school year under contracts which were neither terminated nor breached, but expired by their own terms; the procedure followed by the defendants which culminated in the decision of the Board not to re-employ the plaintiffs exceeded the requirements of state law[2] which demands only that the teacher be notified of the Board's unwillingness to renew her contract; Wisconsin case law permits the defendants to refuse to renew a teacher's contract "for any cause or no cause at all" except that the decision of nonrenewal cannot be based upon constitutionally impermissible grounds; plaintiffs do not allege or show that the defendants refused to renew their teaching contracts for any constitutionally impermissible reason.

■ I express no opinion as to what the requirements of Wisconsin substantive law are in this area nor whether those requirements have been met. The issue presented in this action is whether the defendants met the minimal requirements of substantive and procedural due process required by the Fourteenth Amendment of the United States Constitution in coming to the decision not to renew the plaintiffs' contracts. Satisfaction of the requisites of state law is not determinative of that question.

Defendants ground their motion for summary judgment on the following claims: 1) Joint School District No. 1 is not a "person" for the purposes of 42 U.S.C. § 1983; 2) all the other defendants are immune from liability under § 1983; 3) based on the uncontroverted facts, no federal question is presented and no right to relief exists under § 1983.

*1) Joint School District No. 1 is a "person"*

It is contended that defendant Joint School District No. 1, because a political subdivision of the state, may not be sued as a "person" within the meaning of that term as used in 42 U.S.C. § 1983. Three cases are cited in support: Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), an action for damages against the City of Chicago and 13 of its police officers; Egan v. City of Aurora, 365 U.S. 514, 81 S.Ct. 684, 5 L.Ed.2d 741 (1961), an action for damages against a municipality and certain of its officials; and Harvey v. Sadler, 331 F.2d 387 (9th Cir. 1964), an action for damages against a school district and nine individuals.

It is true that in *Monroe, supra,* the Court spoke in broad language when holding that Congress did not intend to bring municipal corporations within the ambit of 42 U.S.C. § 1983:

"The response of the Congress to the proposal to make municipalities liable for certain actions being brought within federal purview by the Act of April 20, 1871, was so antagonistic that we cannot believe that the word 'person' was used in this particular Act to include them". 365 U.S., at 191, 81 S.Ct. at 486.

■ Further, some courts have held that Monroe v. Pape, *supra,* should be extended to exclude municipalities from liability in actions seeking injunctive relief pursuant to 42 U.S.C. § 1983. Deane Hill Country Club, Inc. v. City of Knoxville, 379 F.2d 321, 324 (4th Cir. 1967). The Seventh Circuit, however, has expressly refused to apply the doctrine of *Monroe* to actions in which injunctive relief is sought. Schnell v. City of Chicago, 407 F.2d 1084, 1086 (7th Cir. 1969); Adams v. City of Park Ridge, 293 F.2d 585, 587 (7th Cir. 1961). Those Seventh Circuit decisions are controlling on this court.

In this action, plaintiff prays both damages and injunctive relief. With respect to damages, I hold that the action may not be maintained against either the District or the Board, but that with respect to the claim for reinstatement, it

2. Section 118.22, Wis.Stats.

may be maintained against both the District and the Board.

## 2) Immunity

Defendants contend that all of them are entitled to dismissal of the entire action on the basis of common law immunity.

■ This contention is clearly without merit with respect to the equitable relief sought here, namely, reinstatement. The purpose of common law immunity enjoyed by the judiciary and legislature, here sought to be extended to school boards and administrators, is to preserve the integrity and independence of those bodies, and to insure that judges and legislatures will act on their free, unbiased convictions, uninfluenced by any apprehensions of consequences. Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); Bauers v. Heisel, 361 F.2d 581 (3d Cir. 1966), cert. den., 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457; Kenney v. Fox, 232 F. 2d 288 (6th Cir. 1956), cert. den., Kenney v. Killian, 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66. Such considerations do not support granting immunity to school boards and administrators against actions seeking the type of equitable relief reflected in an order of reinstatement.

With respect to common law immunity from the plaintiffs' claims for damages, the situation is different.[3] In Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the court held, in an action for damages only, that a policeman was excused from liability under 42 U.S.C. § 1983 when acting in good faith under a statute which he reasonably believed valid, but which was later held unconstitutional. In McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir. 1968), the Seventh Circuit applied the Pierson doctrine to an alleged factual situation somewhat similar to the present cases. In McLaughlin, two probationary teachers brought an action for damages only,

under 42 U.S.C. § 1983, against the Superintendent of Cook County, Illinois, School District No. 149 and the members of the Board of Education of that District. The complaint alleged that plaintiff Steele had not been rehired and plaintiff McLaughlin had been dismissed because of their association with a union. On a motion to dismiss, in deciding the defendants' contention that they enjoyed immunity under both Illinois statute and the common law, the court stated:

"Legislators and judges have broad immunity under Section 1983 because in enacting that statute Congress did not intend to overturn their pre-existing defense. Tenney v. Brandhove, 341 U.S. 367, 376, 71 S.Ct. 783, 95 L. Ed. 1019; Pierson v. Ray, 386 U.S. 547, 554–555, 87 S.Ct. 1213, 18 L.Ed. 2d 288. However, other officials, such as present defendants, retain only a qualified immunity, dependent on good faith action. Pierson v. Ray, supra, at p. 555, 87 S.Ct. 1213; * * *.

" * * * To hold defendants absolutely immune from this type of suit would frustrate the very purpose of Section 1983. Jobson v. Henne, 355 F.2d 129, 133 (2nd Cir. 1966). At best, defendants' qualified immunity in this case means that they can prevail only if they show that plaintiffs were discharged on justifiable grounds. Thus here a successful defense on the merits merges with a successful defense under the qualified immunity doctrine." McLaughlin, supra, 398 F.2d at 290–291.

In a succeeding portion of this opinion, dealing with the defense that no federal claims are present here upon which relief can be granted, I will discuss the question whether, in constitutional terms, the Board's decisions not to renew the plaintiffs' contracts may be on a basis wholly unsupported in fact or on a basis wholly unreasoned. In that

---

3. I have decided, above, that § 1983 does not permit an action for damages against either the District or the Board. The

discussion which follows in the text is related to the remaining defendants.

connection, I will refer again to the problem of common law immunity arising from action taken in good faith.

■ Defendants Joint School District No. 1 and the Board also invoke the doctrine of sovereign immunity, as contrasted with the doctrine of common law immunity just discussed. With respect to a prayer for injunctive relief, the doctrine of sovereign immunity does not bar this action against them, which rests on the allegation that they have acted in violation of the Constitution of the United States. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Whitner v. Davis, 410 F.2d 24 (9th Cir. 1969); Louisiana State Board of Education v. Baker, 339 F.2d 911 (5th Cir. 1964); Board of Supervisors of Louisiana State University v. Fleming, 265 F.2d 736 (5th Cir. 1959); Orleans Parish School Board v. Bush, 242 F.2d 156 (5th Cir. 1957), cert. den., 356 U.S. 969, 78 S.Ct. 1008, 2 L.Ed.2d 1074; School Board of City of Charlottesville v. Allen, 240 F.2d 59 (4th Cir. 1956), cert. den. School Bd. of Arlington County v. Thompson, 353 U.S. 910, 77 S.Ct. 667, 1 L.Ed.2d 664; Dorsey v. State Athletic Commission, 168 F.Supp. 149 (E.D.La.1958), aff'd 359 U.S. 533, 79 S. Ct. 1137, 3 L.Ed.2d 1028.

### 3) The merits of the § 1983 action

■ Defendants assert that

"No federal question is presented and no right to relief under the Civil Rights Act exists for nonrenewal of a public school teacher's contract unless nonrenewal is based on impermissible constitutional grounds such as race, color or religion or because of the teacher's assertion of rights guaranteed by the Constitution."

In Roth v. Board of Regents, 310 F.Supp. 972 (W.D.Wis., 1970), I rejected this contention as applied to a professor in a state university. I decided that even though the reason for nonrenewal is not a constitutionally impermissible reason, such as those referred to in the defendants' argument just quoted, the professor is nevertheless protected from a decision which is wholly without basis in fact and also from a decision which is wholly unreasoned. Although there are many distinctions between the relationship of professors to state institutions of higher learning, on the one hand, and the relationship of teachers to public elementary and secondary schools, on the other, I find and conclude that these distinctions are irrelevant to the issue at hand. That is, a teacher in a public elementary or secondary school is protected by the due process clause of the Fourteenth Amendment against a nonrenewal decision which is wholly without basis in fact and also against a decision which is wholly unreasoned, as well as a decision which is impermissibly based (such as race, religion, or exercise of First Amendment freedom of expression).

In the present cases there is no contention that the basis of either decision was impermissible (such as race, religion, or exercise of First Amendment rights). The contention in both cases goes to arbitrariness: that is, that the decisions were wholly without basis in fact or wholly unreasoned. The immediate question, on defendants' motions for summary judgment, is whether there is a genuine issue as to any material fact bearing on the alleged arbitrariness.

On the present record, the defendants' showing is that the Board's initial decision to consider nonrenewal was based on the reasons presented to it by Administrator Johnson on February 25, and that the Board's ultimate decision not to renew was based on the same reasons. If this showing is to be accepted, obviously I would conclude that the Board's decision was not wholly unreasoned. More than that, I would conclude that none of the reasons was inappropriate, and that any one of them would be constitutionally adequate to support a decision not to renew. As against the defendants' showing, the plaintiffs have alleged in their complaints and in affidavits filed in opposition to the motion for summary judgment: (a) that there is no basis in fact for any of the reasons

presented to the Board by Johnson February 25; and (b) that, as evidenced by statements made by Board members in the March 11 meetings, the Board's ultimate decision was based on only a single reason in each case (ill health in the Gouge case; personality conflicts in the Klein case), and that there is no basis in fact for this specific reason in either case.

■ I conclude that summary judgment of dismissal is inappropriate because there is a genuine issue of material fact both as to identifying the reasons upon which the Board acted in each case, and as to whether there was any basis in fact for any of the reasons in either case.

Moreover, in *Roth*, I decided that the substantive guarantees required procedural protection. In this respect, also, I hold that, like a professor in a state university, a teacher in a public elementary or secondary school is entitled to a statement of the reasons for considering nonrenewal, a notice of a hearing at which the teacher can respond to the stated reasons, and the actual holding of such a hearing if the teacher appears at the specified time and place. A necessary corollary to this proposition—not stated in the opinion in *Roth*—is that the Board's ultimate decision may not rest on a basis of which the teacher was never notified, nor may it rest on a basis to which the teacher had no fair opportunity to respond.

In the Gouge case, it appears that in the letter from Johnson to Gouge, dated March 4, the reasons stated (perhaps as an intended kindness) were more limited, and more softly expressed, than those upon which the Board alleges that it based both its tentative and ultimate decisions not to renew. In the Klien case, in the letter from Johnson to Klein, dated March 7, the reasons stated, though much more softly expressed, more nearly approximated those upon which the Board alleges that it based both its tentative and ultimate decisions not to renew. In both cases, plaintiffs allege that during the March 11 meetings, members of the Board gave each plaintiff cause to believe that only a single reason was actually under consideration and thus effectively deprived each plaintiff of an opportunity to respond fully to the other reasons, in each case, upon which the Board actually based its ultimate decision.

I conclude that there is a genuine issue of material fact as to whether Gouge was ever given a reasonably complete statement of the bases of decision upon which the Board ultimately acted, and that in both cases there is a genuine issue of material fact whether, at the March 11 meetings, one or more of the defendants gave each of the plaintiffs cause to limit her response to one factor or few factors, following which the Board proceeded to base its decision on a wider range of factors.

I add a comment concerning the question of common law immunity with respect to plaintiffs' damage claims, as distinguished from their claims for equitable relief. Obviously in what I am about to say, I presently imply no finding of fact. Upon a full trial in either of these cases, and upon a finding of facts by jury or judge, it is conceivable that two findings might emerge: One might be that the propositions presented by Johnson to the Board were the propositions upon which the Board acted, and that each of them was wholly without basis in fact; the other might be that in presenting these propositions to the Board, Johnson relied upon members of his staff who were in a position to observe the teacher's performance, and that in making its ultimate decision the Board relied upon Johnson. From such findings, it might be concluded that the nonrenewal decision was indeed arbitrary (that is, wholly unsupported in fact), but that the actions of the defendants were taken in good faith. The result might be that the prayer for damages would fail by operation of the doctrine of common law immunity, while the prayer for equitable relief might succeed. This result might be affected

by whether common law immunity is diminished or abrogated by 42 U.S.C. § 1983. See Norton v. McShane, 332 F.2d 855, 860 (5th Cir. 1964).

Because of the presence of genuine issues of material fact, to which I have referred above, I do not reach these questions of law in passing upon defendants' motions for summary judgment.

### Order

Defendants' motions in both of the above-entitled actions for summary judgments of dismissal are hereby granted with respect to the claims for damages against the defendants Joint School District No. 1 and the Board of Education of Joint School District No. 1. In all other respects, defendants' motions in both of the above-entitled actions for summary judgments of dismissal are hereby denied.