455 F.2d 199
 4 Fair Empl.Prac.Cas. 368, 4 Empl. Prac. Dec. P 7652
John McFERREN, Jr., et al., Plaintiffs, and United States of
America, Plaintiff-Intervenor, and Mrs. Mable C.
Walker et al., Intervening Plaintiffs-Appellees,
v.
COUNTY BOARD OF EDUCATION OF FAYETTE COUNTY, TENNESSEE, et
al., Defendants-Appellants.
 No. 71-1206.
 United States Court of Appeals,
Sixth Circuit.
 Jan. 28, 1972.
 
 Jerome Turner, Memphis, Tenn., Canada, Russell & Turner, Memphis, Tenn., of counsel, for appellant.
 Norman J. Chachkin, New York City, and Avon N. Williams, Jr., Nashville, Tenn., Jack Greenberg, James M. Nabrit, III, Sylvia Drew, New York City, on brief, for appellees.
 Thomas M. Keeling, Department of Justice, Washington, D. C., David L. Norman, Acting Asst. Atty. Gen., Brian K. Landsberg, Ben L. Krage, Paul F. Hancock, Attys., Department of Justice, Washington, D. C., Thomas F. Turley, Jr., U. S. Atty., Memphis, Tenn., on brief, for United States.
 Before WEICK, EDWARDS and CELEBREZZE, Circuit Judges.
 EDWARDS, Circuit Judge.
 
 
 1
 Appellant school board appeals from an order entered in the United States District Court for the Western District of Tennessee, Western Division, requiring it to rehire 13 discharged school teachers with back pay.
 
 
 2
 In this case an all white school board in a Tennessee County with 75% black population was required by federal court order to unify its previously unconstitutionally separated black and white school systems. One of its responses was to discharge 22 teachers, 15 of them black and seven of them white. Only one of the white teachers discharged had more than two years service. Most of the 13 black teachers who filed this complaint had periods of service of many years (extending up to 35 years) with this same board.
 
 
 3
 Prior to the desegregation order, all except one of the discharged teachers had been used at all black schools. It apparently seemed obvious to the District Judge, as it does likewise to us, that appellant board had for many years considered these complainants good enough teachers to teach black students, but in the face of the desegregation order, suddenly determined that they were not good enough to teach white students. The District Judge held that in such circumstances the burden of proof to show nondiscrimination in these discharges fell upon the appellant board and that it had not carried that burden. Rolfe v. County Board of Education, 391 F.2d 77 (6th Cir. 1968). We agree.
 
 
 4
 After these discharges, approximately 40 teachers resigned from the Fayette County school system, and as a result, in the summer of 1970, the Board hired an additional 52 teachers. The overwhelming majority of the teachers hired were white. The Board did not rehire any of those who had been discharged.
 
 
 5
 In this case both sides agree that Rolfe v. County Board of Education, 391 F.2d 77 (6th Cir. 1968), states the controlling rule:
 
 
 6
 "The rule is that teachers displaced from a school with a racially homogeneous faculty, because of a decrease in students, must be judged for continued employment by definite objective standards with all other teachers in the system . . ..
 
 
 7
 "Moreover, where a history of racial discrimination is shown to exist, as is the case here, the burden of showing nondiscrimination is on the party having the power to produce the facts. Chambers v. Hendersonville City Board of Education, supra, [364 F.2d 189 (4th Cir. 1966)]." Rolfe v. County Board of Education, supra at 80.
 
 
 8
 In a careful opinion after full hearing, the District Judge found that the school board did not employ definite objective standards in determining who should be discharged. He also held that "a nontenure teacher, who has long periods of service with the system acquires a protectible interest in his continued employment and his nonreelection must meet minimal standards of procedural due process," citing Lucas v. Chapman, 430 F.2d 945 (5th Cir. 1970), and Gouge v. Joint School Dist. No. 1, 310 F.Supp. 984 (W.D.Wis.1970).
 
 
 9
 We agree fully with the District Judge's conclusion that the standards employed by the school board were not "definite objective standards" equally applied to all other teachers in the school system. Under the standards employed no comparison at all was made on the basis of years of experience accomplished in black schools to the apparent complete satisfaction of the school board. The standards employed were basically whether or not the teacher had achieved tenure (as that term was newly interpreted) and whether or not there had been complaints. Many of the complaints relied on for discharge pertained to events of long past years which had obviously not been thought to require disciplinary action at the time.
 
 
 10
 Further, we approve the District Judge's view that a nontenure teacher with long years of service has a protectible interest in his employment, certainly against racially motivated discharge. The facts of this case distinguish it from Orr v. Trinter, 444 F.2d 128 (6th Cir. 1971), where this court held that a probationary teacher of one year's service did not have a due process right to a hearing and a statement of reasons for nonrehire. In Orr, however, the court clearly recognized that race discrimination was a constitutionally impermissible reason for failure to rehire even a one-year probationary employee. Orr v. Trinter, supra at 134. See also Sindermann v. Perry, 430 F.2d 939 (5th Cir. 1970), cert. granted, 403 U.S. 917, 91 S.Ct. 2226, 29 L.Ed.2d 694 (1971); Johnson v. Branch, 364 F.2d 177 (4th Cir. 1966), cert. denied, 385 U.S. 1003, 87 S.Ct. 706, 17 L.Ed.2d 542 (1967). Cf. Jones v. Hopper, 410 F.2d 1323 (10th Cir. 1969), cert. denied, 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed.2d 399 (1970).
 
 
 11
 In our instant case plaintiffs had been employed for terms running up to 35 years and many of them had understood (as did the School Board) that they had tenure. In the year when this dispute arose, a new superintendent discovered that as to teachers of over three years' service who did not have degrees, 12 hours of college work within three years were required for "limited tenure" under state law. No attempt was made to notify the teachers affected of the effect as to them of this new interpretation and no provision at all was made for their being given an opportunity to fulfill the requirement.
 
 
 12
 This record falls far short of demonstrating equitable handling of the work force reduction problem resulting from the desegregation order.
 
 
 13
 For the reasons cited and those more fully set forth in the opinion of the District Judge, we agree with the District Judge that appellant School Board did not carry its burden of showing that these discharges were nondiscriminatory.
 
 
 14
 Another issue in this case is the portion of the District Judge's order requiring the School Board to pay back pay to the teachers found to have been illegally discharged. Appellant Board contends that his order deprived them of the right to a jury trial in relation to a money damage issue. The District Judge and the appellees rely upon NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937), where the Supreme Court said in part that the Seventh Amendment "has no application to cases where recovery of money damages is an incident to equitable relief."
 
 
 15
 The same holding has been entered in the context of racial discharge cases by the Fourth and Fifth Circuits in Smith v. Hampton Training School for Nurses, 360 F.2d 577 (4th Cir. 1966), and Harkless v. Sweeney Independent School District, 427 F.2d 319 (5th Cir. 1970), cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971).
 
 
 16
 In this last case (a case like this involving discriminatory discharge of teachers) the Fifth Circuit discussed the Seventh Amendment issue:
 
 
 17
 "The last question to be reached is the propriety of the grant of a jury trial. The district court determined that the back pay and the factual issues involved in the prayer for injunctive relief presented jury issues and, therefore, granted defendants' demand for jury trial. The law seems otherwise.
 
 
 18
 "Section 1983 was designed to provide a comprehensive remedy for the deprivation of federal constitutional and statutory rights. The prayer for back pay is not a claim for damages, but is an integral part of the equitable remedy of injunctive reinstatement. Reinstatement involves a return of the plaintiffs to the positions they held before the alleged unconstitutional failure to renew their contracts. An inextricable part of the restoration to prior status is the payment of back wages properly owing to the plaintiffs, diminished by their earnings, if any, in the interim. Back pay is merely an element of the equitable remedy of reinstatement. See Smith v. Hampton Training School for Nurses, supra. See also NLRB v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, 48, 57 S.Ct. 615, 81 L.Ed. 893; Agwilines, Inc. v. NLRB, 5 Cir., 1936, 87 F.2d 146, 151.
 
 
 19
 "The district court concluded that NLRB v. Jones and Laughlin Steel Corp., supra, and Agwilines, Inc. v. NLRB, supra, were no longer viable in light of the more recent decisions of Beacon Theatres, Inc. v. Westover, 1959, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988; Dairy Queen, Inc. v. Wood, 1962, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44; and Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp., 5 Cir., 1961, 294 F.2d 486, 489. None of these cases involved back pay. Each involved separate equitable and legal claims joined in the same case. The legal claims were for resolution by the jury. The back pay issue here was not a separate legal claim-rather it was a part of the main equitable claim-reinstatement. The same is true as to the underlying factual issues pertaining to the claims to reinstatement.
 
 
 20
 "This circuit has rejected the view '* * * that the trio of Beason Theatres, Dairy Queen, and Thermo-Stitch is a catalyst which suddenly converts any money request into a money claim triable by jury.' Swofford v. B & W Incorporated, 5 Cir., 1964, 336 F.2d 406, 414. In an action by the Secretary of Labor for an injunction to compel employers to pay employees minimum wages and overtime due them, this court, after discussing Beacon Theatres, Dairy Queen, and Thermo-Stitch, stated: 'In the instant case, however, the purpose of the injunction to restrain the withholding of wages due is not to collect a debt owed by an employer to his employee but to correct a continuing offense against the public interest.' Wirtz v. Jones, 5 Cir., 1965, 340 F.2d 901, 904. We then directed the district court to strike the defendants' demand for a jury trial. 340 F.2d at 905.
 
 
 21
 "In a recent case involving a suit brought because of discrimination in employment, we determined that the employer was not entitled to a jury trial on the issue of back wages. Johnson v. Georgia Highway Express, Inc., 5 Cir., 1969, 417 F.2d 1122. See also Hayes v. Seaboard Coast Line Railroad Company, S.D.Ga., 1969, 46 F.R.D. 49, 52.
 
 
 22
 "We conclude that these authorities teach that a claim for back pay presented in an equitable action for reinstatement authorized by Sec. 1983 is not for jury consideration nor are the factual issues which form the basis of the claim for reinstatement. The Seventh Amendment does not so require. The plaintiffs' claim should have been determined by the court. The grant of jury trial was error." Harkless v. Sweeney Independent School District, supra, 427 F.2d at 323-324.
 
 
 23
 In teacher discharge cases involving racial discrimination, this court has consistently allowed back pay incident to reinstatement orders. Hatton v. County Board of Education of Maury County, Tennessee, 422 F.2d 457 (6th Cir. 1970); Rolfe v. County Board of Education of Lincoln County, Tennessee, 391 F.2d 77 (6th Cir. 1968); Hill v. Franklin County Board of Education, 390 F.2d 583 (6th Cir. 1968).
 
 
 24
 In a suit against a labor union for reinstatement and damages, this court discussed and decided the Seventh Amendment jury trial issue in an opinion by Judge Shackleford Miller:
 
 
 25
 "Briefly stated, the rule appears to be as follows. The amendment preserves the right which existed under the common law when the amendment was adopted. Baltimore & Carolina Line, Inc. v. Redman, 295 U.S. 654, 657, 55 S.Ct. 890, 79 L.Ed. 1636; Welch v. Tennessee Valley Authority, 108 F.2d 95, 98-99, C.A. 6th, cert. denied, Welch v. United States ex rel. and for Use of T. V. A., 309 U.S. 688, 60 S.Ct. 889, 84 L.Ed. 1030. Thus, it has no application to cases where recovery of money damages is an incident to an action seeking equitable relief, even though damages might have been recovered in an action at law. It does not apply where the proceeding is not in the nature of a suit at common law. The present case is not a suit at common law or in the nature of such a suit. It is a statutory proceeding, unknown to the common law. Guthrie National Bank v. City of Guthrie, 173 U.S. 528, 537, 19 S.Ct. 513, 43 L.Ed. 796. It is essentially an equity proceeding for reinstatement as a member of the Local Union, with the recovery of money damages being merely an incident to such relief. It may be that McCraw has a separate common law action for damages for the injury to his thumb in addition to his alleged cause of action under the statute, in the trial of which he would be entitled to a jury. But no such separate cause of action is alleged by the amended complaint, in which the prayer for relief is based solely upon the alleged violation of the Labor-Management Reporting and Disclosure Act of 1959. In our opinion, McCraw was not entitled to a trial by jury. N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 48, 57 S.Ct. 615, 81 L.Ed. 893; United States v. State of Louisiana, 339 U.S. 699, 70 S.Ct. 914, 94 L.Ed. 1216, rehearing denied, 340 U.S. 856, 71 S.Ct. 75, 95 L.Ed. 656; 340 U.S. 907, 71 S.Ct. 276, 95 L.Ed. 656. See: 340 U.S. 899, 71 S.Ct. 275, 95 L.Ed. 651; rehearing denied, 340 U.S. 939, 71 S.Ct. 480, 95 L.Ed. 678; Modification of decree denied, 350 U.S. 812, 76 S.Ct. 43, 100 L.Ed. 728; Welch v. Tennessee Valley Authority, supra, 108 F.2d 95, 98-99, C.A. 6th, cert. denied, Welch v. United States ex rel. and for Use of T. V. A., 309 U.S. 688, 60 S.Ct. 889, 84 L.Ed. 1030; Simmons v. United States, 29 F.Supp. 285, 286-287, W.D.Ky.; Brady v. Trans World Airlines, Inc., 196 F.Supp. 504, 507, D.C.Del.; Conrocode v. Ohio Bell Telephone Co., 11 F.R.D. 303, N.D. Ohio." McCraw v. United Association of Journeymen & Apprentices of Plumbing, etc., 341 F.2d 705, 709-710 (6th Cir. 1965).
 
 
 26
 It seems obvious to us that the principal issues in this case are equitable and that the back pay issue is truly "an incident to equitable relief." NLRB v. Jones & Laughlin, supra, 301 U.S. at 48, 57 S.Ct. 615, 81 L.Ed. 893. On this ground the Supreme Court decisions relied upon by appellants are distinguishable. Cf. Dairy Queen v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).
 
 
 27
 The judgment of the District Court is affirmed.
 
 
 28
 WEICK, Circuit Judge (dissenting).
 
 
 29
 In this case the County Board was required by a desegregation order of the District Court to maintain in the School System, as nearly as practicable a ratio of 60% Negro teachers to 40% white teachers. It is not claimed that this ratio was significantly altered at any time.
 
 
 30
 None of the 22 teachers who were not rehired for the school year 1970-71 had tenure under Tennessee law. T.C.A. Sec. 49-1402 et seq. None had a statutory right to reemployment upon the expiration of his contract. Shannon v. Board of Educ., 199 Tenn. 250, 286 S.W.2d 571 (1955). None was recommended to the Board for rehiring by the Superintendent of Schools.
 
 
 31
 Of the 22 teachers who were not rehired, 15 or 68% were black, and 7 were white. Six of the fifteen blacks who were not rehired were given adverse recommendations by their black principals. Of the seven white teachers who were not rehired, four had been given adverse recommendations by their black principals. During 1969-70 the School Board employed 260 teachers, of whom 156 or 60% were black. 42% of the untenured teachers in the School System were black.
 
 
 32
 Only thirteen of the black teachers who were not rehired claimed racial discrimination. None of the white teachers, not rehired, made any such claim.
 
 
 33
 About forty teachers resigned during the summer of 1970, of whom 10% were black. Replacements were hired, 19% of whom were black.
 
 
 34
 In my opinion, there was no evidence of discrimination and none has been pointed out in the failure of the Board to rehire either black or white teachers.
 
 
 35
 The Court denied defendants' demand for a jury trial and held that the thirteen plaintiffs were entitled to recover damages in the amount that they would have earned had they been rehired, less what they could reasonably have earned in other suitable employment. The Court made no determination as to the specific amounts of damages, stating that he would determine them in a separate hearing. This part of the case is still pending in the District Court, and the equitable issues are pending here, with the result that we may have piecemeal appeals, which is certainly not contemplated by Rule 54(b), Fed.R.Civ.P.
 
 
 36
 The Court declined to hear proof offered by defendants as to the competency of the teachers who were not rehired. It held that the objective standards required in Rolfe v. County Bd. of Educ., 391 F.2d 77 (6th Cir. 1968), had not been followed, and hence proof of incompetency was not admissible. I respectfully disagree.
 
 
 37
 In my opinion, the District Court erred in excluding evidence relating to the competency of the teachers, not rehired. The Board of Education, in utilizing tax funds entrusted to it, had a duty to hire or rehire only competent persons to teach in the public school system. Rolfe may not be used to justify an order requiring the hiring of a teacher who may not be competent to teach.
 
 
 38
 In Rolfe, unlike the present case, the Board had violated the desegregation plan ordered by the District Court by assigning all Negro teachers to a particular high school and hiring fourteen new teachers, all of whom were white.
 
 
 39
 In Rolfe, no standards had been adopted. In the present case the standards adopted by the Board to be followed in determining whether to offer employment to nontenured teachers, were:
 
 
 40
 "1. Teachers who would not be rehired due to the decreased enrollment would be taken from the non-tenure teachers employed by the Board.
 
 
 41
 2. Teachers would be judged on the following criteria:
 
 
 42
 (a) Competency. This included formal education of the teacher, knowledge of the subject matter and ability to convey it to the pupils, which included the ability to maintan discipline.
 
 
 43
 (b) Professional Attitude. This referred to the conduct of the teacher and included the teacher's personal appearance, orderliness and cleanliness maintained in the school room and the teacher's conduct in the community with regard to such matters as promptness in paying debts and evidences of morality and character.
 
 
 44
 (c) Recommendations or complaints. This included oral or written complaints from principals, supervisors and the superintendent of the system, with particular reliance upon a complaint by the principal of the teacher involved.
 
 
 45
 (d) The need for teachers certified in certain fields. This included whether or not the decreased enrollment would cause the Board to have too many teachers in a particular field, such as physical education or science." (pp. 53a-54a)
 
 
 46
 See also page 346a.
 
 
 47
 In my opinion, these standards were objective, within the meaning of Rolfe. There was substantial evidence that these standards were adhered to by the County Board in determining not to rehire the plaintiffs.
 
 
 48
 In its decree, the Court ordered that in determining which teachers should be rehired in the event of further faculty or staff reduction, the sole standards to be applied should be: 1) State certification; 2) College work; and 3) Appropriate credits for length of experience.
 
 
 49
 In my opinion, this was an unwarranted interference with the functions of the County Board and was error. A teacher could have all of these attributes and still be a person unfit for hiring as a teacher.
 
 
 50
 I also disagree with the holding of the District Court that a "non-tenure teacher who has long periods of service acquires a protectible interest in his continued employment and his non-re-election must need minimal standards of procedural due process." The Court relied on Lucas v. Chapman, 430 F.2d 945 (5th Cir. 1970), and Gouge v. Joint School Dist. No. 1, 310 F.Supp. 984 (W.D.Wis.1970).
 
 
 51
 In my opinion, these decisions are contrary to the weight of authority. It is well settled that no person has a constitutional right to public employment. Orr v. Trinter, 444 F.2d 128 (6th Cir. 1971). Such employment is not protected under the due process clause of the Fourteenth Amendment. Freeman v. Gould Special School Dist., 405 F.2d 1153 (8th Cir.), cert. denied, 396 U.S. 843, 90 S.Ct. 61, 24 L.Ed.2d 93 (1969). See also Jones v. Hopper, 410 F.2d 1323 (10th Cir. 1969), cert. denied, 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed.2d 399 (1970); Charland v. Norge Div., Borg-Warner Corp., 407 F.2d 1062 (6th Cir.), cert. denied, 395 U.S. 927, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969); Parker v. Board of Educ., 348 F.2d 464 (4th Cir. 1965), cert. denied, 382 U.S. 1030, 86 S.Ct. 653, 15 L.Ed.2d 543 (1966). As to Federal Government employees, see Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); Medoff v. Freeman, 362 F.2d 472 (1st Cir. 1966).
 
 
 52
 Lastly, the District Court erred in denying to the County Board a jury trial on the legal claim for damage. The majority opinion relies on NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937), Smith v. Hampton Training School for Nurses, 360 F.2d 577 (4th Cir. 1966), and Harkless v. Sweeney Independent School Dist., 427 F.2d 319 (5th Cir. 1970), cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed. 2d 439 (1971).
 
 
 53
 Smith and Harkless both were based on NLRB v. Jones & Laughlin. If Jones & Laughlin is inapplicable, then these decisions ought not to be followed.
 
 
 54
 The Seventh Amendment to the Constitution provides:
 
 
 55
 "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."
 
 
 56
 Jones & Laughlin was not a suit at common law, but was a special statutory NLRB proceeding. Hence, Amendment VII had no application to the NLRB proceeding. Although the National Labor Relations Board performs some quasi-judicial functions, it is not an Article III Court, nor any other kind of a Court.
 
 
 57
 The Supreme Court recognized this difference in Jones & Laughlin when it said:
 
 
 58
 "The instant case is not a suit at common law or in the nature of such a suit. The proceeding is one unknown to the common law. It is a statutory proceeding. Reinstatement of the employee and payment for the time lost are requirements imposed for violation of the statute and are remedies appropriate to its enforcement." (Id., 301 U.S. at 48, 49, 57 S.Ct. at 629).
 
 
 59
 The present action, although based on an alleged violation of a statute (Sec. 1983), is either a suit at common law or is in the nature of such a suit. It was filed in an Article III Court. It sought injunctive relief (reinstatement) and damages.
 
 
 60
 That legal as well as equitable claims are involved in such a case was held in Madison v. Wood, 410 F.2d 564 (6th Cir. 1969), where a Negro policeman filed an action under the Civil Rights Act seeking reinstatement to his position as sergeant and damages for loss of wages. When the statute of limitations was interposed as a defense he amended his complaint to seek only equitable relief. In that case we held:
 
 
 61
 "True, a remedy at law solely for damages would not have been adequate to restore Appellant to his former position as police sergeant, but the fact that Appellant amended his complaint to seek purely equitable relief does not transform his claim into a purely equitable one allowing him to escape the bar of the statute of limitations. Dixie Margarine Co. v. Shaefer, 139 F.2d 221 (6th Cir. 1943). Because of the nature of the alleged wrong done to him, Appellant had a concurrent remedy at law for damages which, because of its inadequacy, entitled him to come into equity for more appropriate relief. Since we hold that Appellant's legal remedy was barred by M.S.A. Sec. 27.605, any equitable relief he may seek must also be barred." (Id. at 567, 568)
 
 
 62
 National Union Elec. Co. v. Wilson, 434 F.2d 986 (6th Cir. 1970) was a cause of action for injunctive relief, for accounting and damages (compensatory and punitive), for conspiracy, and for return of salary payments. It involved unfair competition, and the alleged appropriation of customer lists, trade secrets, and orders. It was held that these averments in the complaint stated actions at law in which the defendants were entitled to trial by jury on the legal claims. We stated:
 
 
 63
 "In W. R. Grace & Co. v. Hargadine, 392 F.2d 9 (6th Cir. 1968), legal as well as equitable issues were involved. The trial court submitted the legal issues to a jury, and decided any equitable issues, including any injunctions. This is what the court should have done in the present case." (434 F.2d at 988)
 
 
 64
 In Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), it was held:
 
 
 65
 "Where both legal and equitable issues are presented in a single case, any legal issues for which a trial by jury is timely and properly demanded must be submitted to a jury. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, pp. 470-473 [79 S.Ct. 948, 3 L.Ed.2d 988]" (Syl. (a))
 
 
 66
 The Court also held that "the legal claims involved in the action must be determined prior to any final court determination of respondents' equitable claims." Id. at 479, 82 S.Ct. at 901.
 
 
 67
 In the present case the Court determined the equitable claims first and has not yet heard the legal claims.
 
 
 68
 In Ross v. Bernhard, 396 U.S. 531 at 542, 90 S.Ct. 733 at 740, 24 L.Ed.2d 729 (1970), the Court said:
 
 
 69
 "In the instant case we have no doubt that the corporation's claim is, at least in part, a legal one. The relief sought is money damages."
 
 
 70
 The plaintiffs, instead of filing a separate suit to vindicate their rights, filed only a motion to intervene (setting forth their claims for relief in said motion) in a pending school desegregation case in which a plan for desegregation had already been approved. In my judgment the District Court should have severed the motion and docketed it as a separate action. In a school desegregation case a District Court does not sit as a super Board of Education to supervise the daily operation of the public schools and determine all controversies which may arise in connection with the hiring of teachers. In any event, the use of this device by plaintiffs cannot operate to deprive the defendants of their constitutional right to a jury trial. Ross v. Bernhard, supra, fn. 15, at 541, 90 S.Ct. 733, 24 L.Ed.2d 729.
 
 
 71
 I would reverse the judgment of the District Court.